THE MONTANA SUPREME COURT
WATER RIGHT CLAIM EXAMINATION RULES

STATE LAW LIBRARY
Justice Building
215 N. Sanders
Helena, Montana 59620

86397

FILED
APR 30 1987
Ethel M. Harrison
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted By

MONTANA WATER COURT

and

DEPARTMENT OF NATURAL RESOURCES AND CONSERVATION

April 30, 1987

TABLE OF CONTENTS
FOR
THE MONTANA SUPREME COURT
WATER RIGHT CLAIMS EXAMINATION RULES

Rule                                                                    Page

CHAPTER 1    INTRODUCTORY PROVISIONS
   I.   Purpose of Rules and Summary of Adjudication Process        1
  II.   Water Court Procedures                                      2
 III.   Definitions                                                 5
  IV.   Centralized Record System                                  10
   V.   Standard Measurements of Water                             11
  VI.   Format of the Department's Summary Report                  12
   (Pages 14 through 19 reserved)


CHAPTER 2    IRRIGATION CLAIM
   I.   Purpose                                                    20
  II.   Owner Name and Address                                     22
 III.   Point of Diversion (P.O.D.)                                23
  IV.   Means of Diversion                                         25
   V.   Reservoirs                                                 26
  VI.   Source                                                     27
 VII.   Place of Use (P.O.U.)                                      29
VIII.   Priority Date                                              31
  IX.   Flow Rate                                                  34
   X.   Volume                                                     37
  XI.   Period of Use                                              39
   (Pages 41 through 49 reserved)


CHAPTER 3    DOMESTIC CLAIM
   I.   Reference to Irrigation Procedures                         50
  II.   Place of Use (P.O.U.)                                      51
 III.   Flow Rate and Volume                                       53
  VI.   Period of Use                                              55
   (Pages 57 through 59 reserved)


CHAPTER 4    STOCKWATER CLAIM
   I.   Reference to Irrigation Procedures                         60
  II.   Point of Diversion (P.O.D.)                                61
 III.   Place of Use (P.O.U.)                                      62
  VI.   Flow Rate and Volume                                       63
   V.   Period of Use                                              65
   (Pages 66 through 69 reserved)

Rule

CHAPTER 5    OTHER USES CLAIM

    I.   Reference to Irrigation Procedures    70
   II.   Purpose    71
  III.   Place of Use (P.O.U.)    72
   IV.   Flow Rate and Volume    73
    V.   Period of Use    75
     (Pages 77 through 79 reserved)

CHAPTER 6    GENERAL PROVISIONS

    I.   Public Meetings    80
   II.   Clarification    81
  III.   Amendments to Claims    83
   IV.   Implied Claims    84
    V.   Late Claims    85
   VI.   Termination of a Claim    86
  VII.   Transfers    87
 VIII.   Change in Appropriation Right    88
   IX.   Supplemental Rights    89
    X.   Multiple Use of a Right    91
   XI.   Irrigation Districts    92
  XII.   Documenting the Department's Examination    93
 XIII.   Claimant Contact    94
  XIV.   Field Investigation    95
   XV.   Returned Mail    97
  XVI.   Post-Decree Revisions    98

EXHIBITS

  A.   Example of Department's Summary Report with Water
      Right Abstract

  B.   Definition of Claimant Contact Regarding
      Irrigated Acres

  C.   Example Claim Amendment Form

  D.   Example Claim Termination Form

  E.   Example Notice of Intent to Conduct a Field Investigation

RULE 1.I.   PURPOSE OF RULES AND SUMMARY OF ADJUDICATION PROCESS

(1)  As provided by §85-2-101(4), MCA:  "Pursuant to Article IX, Section 3(1) of the Montana constitution, it is further the policy of this state and a purpose of this chapter to recognize and confirm all existing rights...for any useful or beneficial purpose."

(2)  The Montana water court has a statutory obligation and the exclusive authority to adjudicate claims of existing water rights.  Under §85-2-243, MCA the water court is authorized to direct the department of natural resources and conservation (hereinafter referred to as the department) to provide such information and assistance as may be necessary to adjudicate the claims of existing rights.  The water court determines the necessity and scope of any preliminary department examination as set out in these rules, but in no way influences the results of the directed examination.  The Montana supreme court has established special Montana water court rules of practice and procedure which guide the adjudication of pre-July 1, 1973 water rights.  A copy of the Montana water court rules may be obtained by contacting the Montana Water Court, P.O. Box 879, Bozeman, Montana 59715.

(3)  Briefly, the adjudication process consists of the following steps:  (a) upon order of the Montana supreme court, the filing of statements of claim for uses of water that existed prior to July 1, 1973;  (b) the clarification and compiling of the claim information into a centralized record system by the department;  (c) under the direction of the water court pursuant to §85-2-243, MCA, the department's examination of claims and the reporting of facts, data, and issues pertaining to the claims as set forth in these rules;  (d) the issuance, by the water court, of temporary preliminary or preliminary decrees based upon the information on the sworn claims, data submitted by the department, additional information obtained by the water judge, and, where appropriate, the contents of approved compacts or the filings for federal and Indian reserved rights;  (e) the notice and opportunity for interested persons to review and object to the temporary preliminary or preliminary decrees for good cause;  (f) judicial hearing by the water court on issues raised by objection or upon the water court's own motion;  (g) the issuance, by the water court, of final decrees based upon the preliminary decrees and the judicial determinations made upon hearings; and,  (h) the opportunity for interested parties to review and appeal the final decrees under §85-2-235, MCA.

(4)  These water right claims examination rules are designed to set out how water right claims are examined by the department during Montana's general stream adjudication.  In the adjudication process, the department is an executive agency providing technical assistance and information to the water court subject to the direction of water judges, pursuant to §85-2-243, MCA. The department assists the water court by gathering, examining, and reporting data, facts, and issues pertaining to the claims of existing rights.  In examining claims, the department's role is limited to factual analysis land the identification of issues.  The rules in this chapter describe how the department gathers data and facts pertinent to the claims of existing water rights.

RULE 1.II.    WATER COURT PROCEDURES

(1)  Water court procedures in the verification phase of the adjudication of existing water rights and the issuance of decrees, includes, but is not limited to, the following:

(a)  Pursuant to §85-2-243, MCA, the water court, after consultation with the department, shall issue orders establishing time frames for the completion of verification by the department and the submission of verification information to the water court.  [Paragraph 26 of Stipulation.]

To secure an accurate estimate of the time frames the water court must consider the following:

(i)    the total number of claims in the basin;

(ii)   the percentage of claims in the basin which are based on irrigation, stock, domestic, and other uses;

(iii)  the the department field office that will perform the verification, the number of persons in the field office, and their relative experience;

(iv)   the time of year when the verification will take place;

(v)    an estimate of the total number of field investigations to be performed; and

(vi)   the time needed after verification is completed for the department to complete and transmit the verification report to the water court, taking into account the availablility and speed of the computer resources in Helena.  [From Chief Water Judge Lessley's March 5, 1986, letter to Larry Fasbender.]

(b)  The water court shall order that the following specific elements of each type of water right claim be verified by the department.  [Paragraph 26 of Stipulation with modification.]

(i)    The name and post office address of the owner of the right;

(ii)   the amount of water, rate, as well as volume, where applicable, included in the right;

(iii)  the date of the priority of the right;

(iv)   the purpose for which the water included in the right is used;

(v)    the place of use and a description of land, if any, to which the right is appurtenant;

(vi)   the source of water included in the right;

(vii)  the place and means of diversion;

(viii) the inclusive dates during which the water is used each year;

(ix)   any other information necessary to fully define the nature and extent of the right.  [From Chief Water Judge Lessley's March 5, 1986, letter to Larry Fasbender.]

The verification by the department shall be limited to factual analysis and the identification of issues. The water court will refrain from participating in the verification of claims by the department, except the water court, upon proper application and for good cause shown, may enjoin the department from acting beyond its jurisdiction in the verification process.

(c) The water court shall issue an order that applies to any basin or subbasin authorizing the department to conduct field investigations where the department or the water court finds an investigation necessary to achieve the accuracy of the adjudication.

(d) The field investigations shall be conducted only under the following conditions:

(i) Notice of intent to conduct a field investigation and the basis for that investigation are given to the water court and the claimant;

(ii) Notice and opportunity to attend are given to the claimant; and

(iii) The claimed right appears to be erroneous, exaggerated, or nonexistent. [Paragraph 26 of Stipulation.]

(2) After receipt of the department's verification report for the basin, the water court shall issue an appropriate preliminary, temporary preliminary, or other interlocutory decree under §85-2-231, MCA. A preliminary, temporary preliminary, or other interlocutory decree issued by the water court shall describe (1) the claimed right, (2) the department's verification information where different from the claim, and (3) any other changes authorized by the water court. The preliminary, temporary preliminary, or other interlocutory decrees shall be issued subject to the objection and hearing procedures set forth in §85-2-201, et seq., MCA, the water court rules, and the stipulation in supreme court cause nos. 85-345, 85-468, and 85-493. A preliminary, temporary preliminary, or interlocutory decree shall state that unless the claimant contests changes based on the verification information submitted by the department or contests other changes ordered by the water court, (1) the claim may be modified accordingly by the water court when the next decree is issued, (2) a hearing may be held, or (3) the water court may take whatever action is deemed necessary in the exercise of its judicial discretion as long as the basis for the action is set forth in the findings of fact and conclusions of law in the next decree issued. If the water court rejects the department's verification information, a copy of the water court's findings of fact and conclusions of law shall be served on the department by the water court. A claimant may contest the department's verification information by signing a notice of intent to appear to be provided by the water court. [Paragraph 27 of Stipulation.]

(a) Any temporary preliminary decrees issued by the water court shall describe how the claimed right was modified;

(b) The preliminary decrees issued by the water court shall describe how the claim as decreed in the temporary preliminary decree or interlocutory decree was modified, if at all. A preliminary decree issued without a temporary preliminary decree shall describe how the claimed right was modified;

3

(c) Final decrees issued by the water court shall describe how the claim was modified from the preliminary decree. [Paragraph 42 of the Stipulation.]

(3) Within a reasonable time after the promulgation of these examination and verification procedures as set out hereinafter, the department, in those basins where temporary preliminary decrees or preliminary decrees have been issued, shall file a report with the water court comparing the previous verification procedures with these verification procedures. The water court (1) on its own motion, (2) on the request of the department, or (3) on the request of any person may order the department to apply the procedures adopted herein to any of those basins. Upon good cause shown, the water court shall grant such leave in an order otherwise conforming with the procedures provided for under subsection (2). [Paragraph 30 of the Stipulation.]

(4) Upon receipt of any additional verification information from the department, the water court shall determine whether an amended decree should be issued containing some or all of such information. If the water court does issue an amended decree, claimants within the affected basin shall be notified thereof pursuant to §85-2-232(1), MCA, and objections may be filed in accordance with §85-2-233, MCA, to any or all amendments to the decree. [Paragraph 30 of the Stipulation.]

NOTE:    The Water Court opposes the inclusion of this rule (1.II.) in these examination rules.

4

RULE 1.III.    DEFINITIONS

Unless the context requires otherwise, the following definitions apply in this chapter:

(1)    "Abstract" means the computer printout of each claim of an existing water right showing the information submitted on the sworn claim, any changes authorized by the water court, remarks noting any obvious factual or legal issues presented by the claim, and other remarks explaining the nature and extent of the claimed water right.

(2)    "Acreage" means the number of irrigated acres.

(3)    "Adjudication" means the judicial determination of water rights that existed prior to July 1, 1973.

(4)    "Amended Claim" means
DNRC Version:    the contents of a submitted claim as altered or changed by the claimant as to any matter contained in the original claim except that no matter may be amended to incorporate any water right or portion thereof which may have been abandoned by failure to file a claim as provided in §85-2-226, MCA, and as allowed by the water court.

Water Court Version:    the contents of a submitted claim as altered or changed by the claimant as to any matter contained in the original claim and as allowed by the water court.

(5)    "Animal Unit" means one cow and calf pair, three pigs, or five sheep.  One horse is 1.5 animal units.

(6)    "Appropriate" means to divert, impound or withdraw a quantity of water for a beneficial use.

(7)    "Basin Code" means the respective number/letter combination used to identify each of the 85 basins in Montana (e.g. 43QJ) according to the Atlas of Water Resources of Montana prepared by the Montana water resources board.

(8)    "Beneficial Use" means a use of water recognized as beneficial prior to July 1, 1973 and used for the benefit of the appropriator, other persons, or the public and may include but not be limited to agricultural (including stockwater), domestic, fish and wildlife, industrial, irrigation, mining, municipal, power generation and recreational uses.

(9)    "Centralized Record System" means the records of all claims of existing rights, permits, certificates, applications and other documents filed with the department.

(10) "Change in Approriation Right" means a change in the place of diversion, place of use, purpose of use, or place of storage of a water right made in accordance with §85-2-402, MCA.

(11) "Claim" means a declaration of an existing right, as defined in §85-2-224, MCA, filed with the department upon order of the Montana supreme court.

5

(12) "Claimant" means any person, according to §85-2-102, MCA, who has filed a statement of claim for an existing water right.

(13) "Claimant Contact" means communication between the department and a claimant or claimant's authorized representative regarding their claimed water right.

(14) "Clarification" means the process by which elements of a water right are made more complete, clear, concise and interpretable without changing the intent of the claimed information.

(15) "Climatic Area" means areas defined by differing climatic and geographic conditions containing similar crop consumptive use data as delineated by the United States Department of Agriculture, Soil Conservation Service.

(16) "Decreed Right" means a claimed water right previously determined in a judicial decree.

(17) "Department" means the Montana Department of Natural Resources and Conservation.

(18) "Examination" or "Verification" means the process under these rules of examining, gathering information, and reporting data, facts, and issues pertaining to the claims of existing water rights.

(19) "Existing Water Right" means a right to the use of water which would be protected under Montana law as it existed prior to July 1, 1973.

(20) "Field Investigation" means an on-site inspection, under §85-2-243, MCA, of physical evidence and features relating to the individual elements of a claimed water right.

(21) "Field Office" means branch offices established by the department to provide water right information and assistance to the public or public agencies.

(22) "Filed Appropriation Right" means a claimed water right which has been filed and recorded in the office of the county clerk and recorder.

(23) "Final Decree" means the final water court determination of existing water rights within a basin or subbasin, as described in §85-2-234, MCA.

(24) "Flow Rate" means the rate at which water has been diverted, impounded or withdrawn from the source for beneficial use.

(25) "Groundwater" means any water beneath the land surface or beneath the bed of a stream, lake, reservoir, or other body of surface water, and which is not a part of that surface water.

6

(26) "Guideline" means

DNRC Version: an estimate of reasonable use to be used as the benchmark for initiating further department review or claimant contact under these rules. The estimate of reasonable water use is derived from technical data compiled by the department.

Water Court Version: an estimate of reasonable use to be used as the benchmark for initiating further department review or claimant contact under these rules. The estimate of reasonable water use is derived from technical data and recommendations of the department and adopted by the water court.

(27) "Household" means the dwelling, house, or other domestic facilities where a family or social unit lives.

(28) "Implied Claim" means a claim authorized by the water court to be separated and individually identified from multiple rights evident in one or more claims.

(29) "Irrigation District" means a statutory district created pursuant to Title 85, Chapter 7, MCA.

(30) "Lake" means a naturally occurring inland body of water.

(31) "Late Claim" means a claim filed with the department after 5:00 p.m., April 30, 1982.

(32) "Legal Land Description" means the description given to a parcel of land in terms of, but not limited to, section, township, range, and county.

(33) "Means of Diversion" means the structures, facilities, or methods used to initiate conveyance of water from the source of supply.

(34) "Microfilm Record" means a photographic film record on a reduced scale of all paper documents related to a water right.

(35) "Multiple Use" means a single appropriation used for more than one purpose by a single owner.

(36) "Natural Overflow" means the water which results in the flooding of lands adjoining streams during high flow with no man-made diversion involved.

(37) "Natural Subirrigation" means irrigation resulting from a naturally occurring high water table condition that supplies water for crop use.

(38) "Other Uses" means all uses of water for beneficial purposes other than stockwater, domestic, and irrigation uses.

(39) "Owner" means any person, according to §85-2-102, MCA, who has title or interest in water rights or properties.

(40) "Period of Use" means the period in a calendar year when water is used for a specified beneficial use.

(41) "Place of Use" (P.O.U.) means the lands, facilities, or sites where water is beneficially used.

(42) "Point of Diversion" (P.O.D.) means the location of the initial diversion of water from the source of supply.

(43) "Preliminary Decree" means the preliminary water court determination of existing water rights within a basin or subbasin as described in §85-2-231, MCA, which preceeds the final decree.

(44) "Priority Date" means the allocation date associated with a beneficial use of water which determines ranking among water rights on a source.

(45) "Reservoir" means the storage of water created by man-made means that impounds or diverts water in or from a source.

(46) "Source" means the specific supply from which water is taken for a beneficial use.

(47) "Spring"
"Developed Spring" means groundwater if its natural flow is increased by some development at its point of extrusion from the ground, such as simple excavation, cement encasement, or rock cribbing.
"Undeveloped Spring" means surface water if its natural flow is not increased by some development at its point of extrusion from the ground.

(48) "Subbasin" means a designated area that drains surface water to a common point within a basin.

(49) "Summary Report" means a report sent to the Montana water court presenting claimed data and summarizing the department's examination findings for each claim within a basin or subbasin.

(50) "Supplemental Rights" means separate water rights for the same purpose, owned by a claimant, and used on a common place of use.

(51) "Temporary Preliminary Decree" means a water court decree, prior to the issuance of the preliminary decree, as necessary for the orderly administration of existing water rights pursuant to §85-2-231, MCA.

(52) "Transfer" means a change in ownership of water rights pursuant to §§85-2-421 through 85-2-426, MCA.

(53) "Use Right" means a claimed water right perfected by appropriating and putting water to beneficial use without written notice, filing, or decree.

(54) "Volume" means the amount of water which has been diverted, impounded or withdrawn from the source over a period of time for beneficial use, usually measured in acre-feet.

(55) "Water Court" means the water division of the state courts presided over by water judges responsible for adjudicating existing water rights in Montana as provided for in Title 3, Chapter 7, MCA.

(56) "Water Judge" means a judge responsible for adjudicating existing water rights as provided for in Title 3, Chapter 7, Part 2, MCA.

(57) "Water Master" means a person appointed by a water judge to assist in the adjudication of existing water rights as provided for in Title 3, Chapter 7, Part 3, MCA, and Rule 53 of the Montana Rules of Civil Procedure.

(58) "Water Resources Survey" means a survey of water resources and water rights in Montana published in book form on a county basis by the former state engineer's office or water resources board, predecessors of the department.

(59) "Well" means any artificial opening or excavation in the ground, however made, by which groundwater is sought or can be obtained or through which it flows under natural pressure or is artificially withdrawn.

## RULE 1.IV.    CENTRALIZED RECORD SYSTEM

(1)   The centralized record system for the adjudication is maintained by the department in three parts as follows:

    (a)   numbered files of the original claim forms and documentation submitted by the claimant along with related materials added by the department;

    (b)   a computer record system which is initially the claimed information as clarified by the department;

    (c)   a microfilm record of each numbered claim file.

(2)   All water right information as claimed can be found in the claim file or microfilm record maintained by the department.  Additionally, the claim files and the microfilm records will be updated to document each stage of the adjudication process.

(3)   The data in the computer record system, initially the clarified claimed information, is used as the adjudication process advances to prepare the department's summary report and ultimately to produce the final decrees.

(4)   The department will not change the claimed elements of a water right in the computer record system except as follows:

    (a)   Prior to issuance of a decree:
        (i)   to implement procedures as set out in these rules;
        (ii)   to comply with §85-2-103, MCA, §85-2-402, MCA, and §§85-2-421 through 85-2-426, MCA;
        (iii)  to reflect a claimant's amendments to a claim according to Rule 6.III.

    (b)   After issuance of a decree:
        (i)   as specifically ordered or directed in writing by the water court.
        (ii)   in compliance with §85-2-402, MCA and §§85-2-421 through 85-2-426, MCA.

(5)   All department records pertaining to the adjudication of water rights are public records and therefore open to inspection by any person as provided in §2-6-102, MCA.  Prior to final decree anything in the file is part of a work in progress and may be subject to change.

(6)   For parties requesting reproductions of department materials, fees will be charged and collected at rates established by the department. Reproduced materials for which costs will be recovered include, but are not limited to, photocopies, copies from microfilm, copies of microfilm, and computer generated materials.

(7)   Any person may obtain a copy of a decree issued by the water court from the department for a fee of $20.00 or the cost of printing, whichever is greater in accordance with §85-2-232(2), MCA.  Indexes of decrees may be obtained for a fee of $12.50 or the cost of printing, whichever is greater.

10

RULE 1.V.   STANDARD MEASUREMENTS OF WATER

(1)   The department will use the following conversions in determining equivalent rates of diversion and volume:

(a)   forty (40) statutory or miner's inches equals 1.0 cubic foot per second (cfs);

(b)   one (1) miner's inch equals 11.22 gallons per minute (gpm);

(c)   one (1) cubic foot per second (cfs) equals 448.8 gallons per minute (gpm);

(d)   one (1) acre-foot of water equals 325,851 gallons.

(2)   The department's summary report to the water court shall identify units of water measurement in compliance with §85-2-103, MCA, as follows:

(a)   for rates of diversion
(i)   less than one (1) cfs will be in units of gallons per minute;
(ii)   equal to or greater than one (1) cfs will be in units of gallons per minute or cubic feet per second, as claimed or based on the customary reference for the method of diversion;

(b)   volumes will be in acre-feet or gallons.

11

## RULE 1.VI.  FORMAT OF THE DEPARTMENT'S SUMMARY REPORT

(1)  The department will prepare a summary report for each claim in a basin or subbasin which will be submitted to the water court for its review and use in adjudicating existing rights.  An example is shown as Exhibit A.  The summary report of a claimed water right will contain:

      (a)  an abstract of the water right listing;
          (i)  the claimed data or changes authorized by the water court or these rules;
          (ii) court ordered data and remarks as set out in these rules;

      (b)  pertinent department examination data and remarks.

(2)  The department's examination of elements of a water right will be reported in the summary report as follows.

      (a)  Each abstract of a water right will list the claimed data or the clarified claimed data for the following elements.
          (i)      Purpose
          (ii)     Point of diversion
          (iii)   Means of diversion
          (iv)    Place of use
          (v)     Acres irrigated
          (vi)    Priority date
          (vii)   Flow rate
          (viii) Volume, when or as required by statute or water court order
          (ix)    Period of use

When the department's examination substantiates or does not appear to contradict those elements as claimed, no additional facts, data, or issues will be reported.  When the information from the department's examination differs from that claimed, the claimed data will be reported along with the department's information.

      (b)  Each abstract of a water right will list the current and consistent data found by the department for the following elements.
          (i)    Owner name and address
          (ii)   Source
          (iii) A common point of diversion used for more than one claim

The department's data may supersede the claimed data.  Changes to claimed information made as a result of the department's examination will be denoted on the abstract.

      (c)  Other information necessary to describe a water right will be listed on each abstract, where appropriate.
          (i)    Basin code
          (ii)   Water right identification number
          (iii) Type of historical water right
          (iv)  Climatic area for irrigation

        (v)   Type of irrigation system
        (vi)  Reservoir data
        (vii) Surface water or groundwater designation

      (d)  Remarks shall be added to explain unique aspects or features of each element, where appropriate.

      (e)  Remarks limiting supplemental rights and multiple uses of a right will be added according to Rule 6.IX. and Rule 6.X.

      (3)  The department's summary report will be sent to the water court. The full report containing the examination materials, computations, data and facts, and a copy of the summary report will be maintained in the claim file.

      (a)  The full and summary reports will be available for inspection and copying by all persons.

      (b)  A microfilm copy of the full report for a basin, when completed, will be located at the local water rights field office, the department's central office in Helena, the water court, and the clerk of court for the principal county in the basin.

      (c)  The printed summary report for a basin, when completed, will be located at the local water rights field office, the department's central office in Helena, the water court, and the clerk of court for the principal county in the basin.

      (d)  Inquiries concerning the full and summary report may be directed to the local water rights field office, the department's central office in Helena, or the water court. Any legal issues raised shall be referred to the water court.

## Chapter 2.  Irrigation Claim

RULE 2.I.  PURPOSE

(1)  Facts and information concerning the purpose of a water right will be identified using the information in the claim together with any other data gathered by the department.

(2)  When the claimed purpose cannot be substantiated, the department will gather further facts and data pertaining to the specific claim.  The claimant may be contacted pursuant to Rule 6.XIII.  In addition, a field investigation may be conducted pursuant to Rule 6.XIV.  Discrepancies in the claimed purpose that may require claimant contact or a field investigation include, but are not limited to:

(a)  the purpose cannot be discerned from the information in the claim;

(b)  the water use appears to be for a purpose other than that claimed;

(c)  the claimed purpose cannot be substantiated;

(d)  several purposes are indicated in the claim as multiple uses of the right.  Fire protection will not be considered an additional use.

(3)  All claims under one ownership will be reviewed to identify multiple use of a right pursuant to Rule 6.X.

(4)  The claimed purpose of a water right will not be changed as a result of the department's examination unless:

(a)  amended by the claimant;

(b)  clarified by the department to consistently identify similar purposes.

(5)  In the summary report to the water court, the department shall provide data and facts concerning the purpose of a right including:

(a)  an abstract of the water right listing:
(i)  the claimed purpose or the clarified claimed purpose;
(ii)  a notation of changes made as a result of the department's examination.

(b)  the department's examination information which may include:
(i)  the following uses denoted as an issue at the direction of the water court:
(A)  flood control;
(B)  erosion control;
(C)  instream use for fish and wildlife, recreation, or wildlife where no appropriation has been made, excepting Murphy Rights under 85-801, RCM (1969).

Such issues shall be denoted by the following remark:

DNRC Version:
Example:         "AT THE DIRECTION OF THE WATER COURT, THIS
                 CLAIMED PURPOSE IS BEING QUESTIONED AS A
                 BENEFICIAL USE OF WATER EXISTING PRIOR TO JULY
                 1, 1973."

Water Court Version:
Example:         "THIS CLAIMED PURPOSE IS QUESTIONED AS A
                 BENEFICIAL USE OF WATER EXISTING PRIOR TO JULY
                 1, 1973."

     (ii)  issue statements concerning discrepancies in the claimed purpose as specified in this rule;

     (iii)  a notation if the right apparently has not been used for the claimed purpose for the 10 consecutive years or more prior to July 1, 1973;

     (iv)  an identification of unique aspects or features of the purpose;

     (v)  an identification of any other pertinent facts, data, and issues.

RULE 2.II.   OWNER NAME AND ADDRESS

(1)   The name and address on all water rights claimed by the same individual will be made consistent and current as follows:

(a)   The name and address of all water rights belonging to each claimant in a basin will be reviewed.   Discrepancies will be identified by comparing the claimant's name and address with information on record with the department's centralized record system, telephone directories, other sources, and if necessary, claimant contact data.

(b)   Ownership shall be updated in compliance with §§85-2-421 through 85-2-426, MCA pursuant to Rule 6.VII.

(c)   Ownership shall be updated in compliance with §85-2-402, MCA pursuant to Rule 6.VIII.

(2)   The department, as a result of its examination, may revise the claimant's name or address to make them consistent and current.

(3)   In the summary report to the water court, the department shall provide data and facts concerning owner name and address including:

(a)   an abstract of the water right listing:
(i)   the current owner name and address identified by the department;
(ii)   a notation of changes made as a result of the department's examination;

(b)   the department's examination information which may include:
(i)   an identification of unique features of the owner name and address;
(ii)   an identification of any other pertinent facts, data, and issues.

(4)   A list of past owners of each claimed water right who have complied with §§85-2-421 through 85-2-426, MCA or §85-2-402, MCA shall be maintained by the department to be used by the water court for notice purposes.

RULE 2.III.   POINT OF DIVERSION (P.O.D.)

(1)   The claimed P.O.D. will be identified and described to the nearest reasonable and concise legal land description.

(a)   The information in the claim, aerial photos, topographic maps, Water Resources Survey information, county land ownership records, and other sources available to the department may be used to review the claimed P.O.D.

(b)   When the claimed P.O.D. cannot be substantiated, the department will gather further facts and data pertaining to the specific claim.   The claimant may be contacted pursuant to Rule 6.XIII.   In addition, a field investigation may be conducted pursuant to Rule 6.XIV.

(c)   A common diversion structure used for more than one claim will have a consistent legal land description specified on all respective claims.

(2)   Claims with a diversion within a common drainage basin or subbasin will be identified with a common basin code.   The basin code will be reviewed to confirm that the claim has been grouped in the correct basin.

(a)   If the department finds that a claim was omitted from a basin where a decree has been issued, the water court shall be notified.

(b)   If the department finds that a claim was omitted from a basin where a decree has not been issued, the department will change the basin code in the claim file and in the centralized record system.

(3)   When the P.O.D. is in one basin and the place of use, or a portion thereof, is in another basin, an interbasin transfer shall be identified for the basin of the P.O.U. as well as the basin of the P.O.D.

(4)   The claimed point of diversion of a water right will not be changed as a result of the department's examination unless:

(a)   amended by the claimant;

(b)   clarified to the nearest reasonable and concise legal land description;

(c)   revised to make a common P.O.D. used for more than one claim consistent.

(5)   In the summary report to the water court, the department shall provide data and facts concerning P.O.D. including:

(a)   an abstract of the water right listing:
(i)   the basin code designated by the department;
(ii)   the claimed legal land description or the clarified claimed legal land description;
(iii)   a notation of changes made as a result of the department's examination;

(iv)   additional legal land descriptions identified by the department such as government lots, subdivisions, certificates of survey, homestead entry surveys, and mineral surveys;

(v)   a court statement identifying an interbasin transfer of water;

Example:   "THIS APPROPRIATION OF WATER TAKES WATER FROM THE _____ RIVER DRAINAGE (BASIN ____) AND USES IT IN THE _____ RIVER DRAINAGE (BASIN____).  AS A RESULT, IT WILL BE DECREED IN BOTH BASINS AND SUBJECT TO OBJECTION IN EITHER BASIN BEFORE BECOMING FINAL.

"THIS APPROPRIATION OF WATER TAKES WATER FROM THE _____ RIVER DRAINAGE (BASIN ____) AND USES IT IN THE _____ RIVER DRAINAGE (BASIN____) AND THE _____ RIVER DRAINAGE (BASIN ____).  AS A RESULT, IT WILL BE DECREED IN BOTH BASINS AND SUBJECT TO OBJECTION IN EITHER BASIN BEFORE BECOMING FINAL.

(b)   the department's examination information which may include:

(i)   an identification of unique aspects or features of the P.O.D.;

(ii)   an identification of any other pertinent facts, data and issues.

RULE 2.IV.  MEANS OF DIVERSION

    (1)  Facts and information concerning the means of diversion of a water right will be identified using the information in the claim, aerial photos, topographic maps, Water Resources Survey information, and other sources available to the department.

    (2)  When the means of diversion cannot be substantiated, the department will gather further facts and data pertaining to the specific claim.  The claimant may be contacted pursuant to Rule 6.XIII.  In addition, a field investigation may be conducted pursuant to Rule 6.XIV.

    (3)  The claimed means of diversion of a water right will not be changed as a result of the department's examination unless:

        (a)  amended by the claimant,

        (b)  clarified by the department to consistently identify similar means of diversion.

    (4)  In the summary report to the water court, the department shall provide data and facts concerning means of diversion including:

        (a)  an abstract of the water right listing:
            (i)  the claimed means of diversion or clarified claimed means of diversion;
            (ii)  a notation of changes made as a result of the department's examination;

        (b)  the department's examination information which may include:
            (i)  an identification of unique aspects or features of the means of diversion;
            (ii)  an identification of any other pertinent facts, data or issues.

RULE 2.V.   RESERVOIRS

(1)   A reservoir designation and legal land description for the location of the impoundment structure will be identified when stored water is used in combination with the claimed purpose.

(a)   The information in the claim along with other data gathered by the department will be used to check the reservoir designation.  Normally when the claimed volume is greater than 15 acre-feet, and data are not sufficient to identify the size, use, location, and other relevant features of the reservoir, the claimant will be contacted pursuant to Rule 6.XIII.  In addition, a field investigation may be conducted pursuant to Rule 6.XIV.

(b)   A questionnaire may be sent to claimants whose water rights involve reservoirs requesting data such as:
(i)     dam height
(ii)    surface area
(iii)   maximum reservoir storage capacity
(iv)    date constructed
(v)     period of diversion
(vi)    period of use from storage
(vii)   volume of use per year
(viii)  carry-over storage

(2)   The flow rate guidelines for uses involving reservoirs are found in the flow rate rule of each irrigation, domestic, stock, and other use chapter.

(3)   The volume guidelines for uses involving reservoirs are found in the volume rule of each irrigation, domestic, stock, and other use chapter.

(4)   In the summary report to the water court, the department shall provide data and facts concerning reservoirs including:

(a)   an abstract of the water right listing:
(i)   the reservoir designation and legal land description of the impoundment structure;
(ii)   the maximum reservoir storage capacity, when available;
(iii)   additional legal land descriptions identified by the department such as government lots, subdivisions, certificates of survey, homestead entry surveys, and mineral surveys;

(b)   the department's examination information which may include:
(i)   an identification of a reservoir found to be breached, washed out, or in a state of non-use;
(ii)   an identification of unique aspects or features of the reservoir;
(iii)   an identification of any other pertinent facts, data, and issues.

## RULE 2.VI.    SOURCE

(1)   The source name will be identified using information in the claim along with other data gathered by the department.   Source names for all claims on a particular source will be made consistent.

(a)   The United States Geological Survey (U.S.G.S.) quadrangle map, Water Resources Survey (W.R.S.) map, or other published maps, will serve to substantiate the claimed source name.

(b)   The most common colloquial named source will serve to identify the source when not in conflict with the U.S.G.S. or W.R.S. map.

(c)   If the source or source name cannot be identified, the department will pursue other available information.   In addition the claimant may be contacted pursuant to Rule 6.XIII.

(2)   When more than one source is indicated in a claim, the multiple sources will be identified according to this rule.   The claimant may be contacted pursuant to Rule 6.XIII.

(a)   When the two or more sources have claims filed on them by other parties, the claim will be sent to the water court requesting a review for possible implied claims pursuant to Rule 6.IV.

(b)   When the two or more sources do not have claims filed on them by other parties and,
(i)   the sources are independently named on the U.S.G.S. or W.R.S. maps, the claim will be sent to the water court requesting a review for possible implied claims pursuant to Rule 6.IV; or
(ii)   the sources are not independently named on the U.S.G.S. or W.R.S. maps, implied claims will normally not be necessary but the contributing sources will be identified using explanatory remarks.

(3)   The department, as a result of its examination, may revise the claimed source name using the following standard descriptions to identify the same sources consistently:

(a)   streams, lakes, reservoirs, named springs, and named wells shall be standardized using, in order of preference, U.S.G.S., W.R.S., or colloquial names;

(b)   unnamed springs flowing into a named hydrological feature shall be named "Spring Tributary of _____";

(c)   unnamed wells shall be named "Well";

(d)   unnamed streams, lakes, and reservoirs flowing into a named hydrological feature shall be named "Unnamed Tributary of _____";

(e)   other standard descriptions which accurately and consistently describe the source.

27

(4)  In the summary report to the water court, the department shall provide data and facts concerning source including:

       (a)  an abstract of the water right listing:
          (i)  the claimed source or the standardized source identified by the department;
          (ii)  a notation of changes made as a result of the department's examination;

       (b)  the department's examination information which may include:
          (i)  an identification of unique aspects or features of the source;
          (ii)  an identification of any other pertinent facts, data, and issues.

## RULE 2.VII.  PLACE OF USE (P.O.U.)

(1)  The claimed P.O.U. will be identified and described to the nearest reasonable and concise legal land description and the associated irrigated acreage.

    (a)  The information in the claim, aerial photos, topographic maps, Water Resources Survey information, county land ownership records, as well as other sources available to the department may be used to review the claimed P.O.U. and associated claimed acreage.

    (b)  When the claimed legal land descriptions or claimed acreages cannot be substantiated, the department will gather further facts and data.  The claimant may be contacted for additional information pursuant to Rule 6.XIII.  In addition, a field investigation may be conducted pursuant to Rule 6.XIV.  Discrepancies in the claimed place of use that may require claimant contact or a field investigation include, but are not limited to:
        (i)  no legal land description is given for the claimed place of use;
        (ii)  the claimed legal land description or claimed acreage is vague or incomplete;
        (iii)  the claimed legal land description or claimed acreage is inconsistent with the source, point of diversion, or purpose claimed.

(2)  The claimant's map and two or more post-priority date data sources, if available, will be used to examine the irrigated acreage claimed.

    (a)  If the acreage identified by the department on either data source differs significantly from the acreage claimed, additional information will be gathered.

    (b)  If the acreage identified by the department from one data source differs significantly from that identified on the second data source, additional information will be gathered.

    (c)  Differences exceeding the amount defined in exhibit B will require claimant contact pursuant to Rule 6.XIII.  If additional facts are needed, the department may conduct a field investigation pursuant to Rule 6.XIV.

(3)  When the department identifies a claimed P.O.U. of one party overlapping any portion of the claimed P.O.U. of another party, both parties will be contacted pursuant to Rule 6.XIII.  If the parties do not reach agreement among themselves correcting the overlapping P.O.U.'s, the overlap shall be identified as an issue in the summary report to the water court.

(4)  The claimed place of use and acreage irrigated of a water right will not be changed as a result of the department's examination unless:

    (a)  amended by the claimant;

    (b)  clarified to the nearest reasonable and concise legal land description.

(5) In the summary report to the water court, the department shall provide data and facts concerning P.O.U. including:

(a) an abstract of the water right listing:
(i) the claimed acreage or the clarified claimed acreage;
(ii) the claimed legal land description or the clarified claimed legal land description;
(iii) a notation of changes made as a result of the department's examination;
(iv) additional legal land descriptions identified by the department such as government lots, subdivisions, Certificates of survey, homestead entry surveys, and mineral surveys;

(b) the department's examination information which may include:
(i) an identification of unique aspects or features of the place of use;
(ii) the legal land description and acreage found when the data sources differ from the acreage claimed by more than the amount specified in exhibit B;
(iii) the acreage found on the data sources along with the date of each respective data source, when the acreage on the data sources differ from each other by more than the percentage specified in exhibit B;
(iv) an identification of any other pertinent facts, data, and issues.

30

## RULE 2.VIII.  PRIORITY DATE

(1)  The claimed priority date and claimed type of historical right will be identified from the submitted documentation in the claim along with other data gathered by the department.

(2)  The type of historical right (i.e., use right, filed appropriation right, decreed right) will be identified based on the definitions in Rule 1.III.  If the claimed type of historical right differs from the definitions, or the information available is insufficient to substantiate the type of historical right, the claimant will be contacted pursuant to Rule 6.XIII.

(3)  Each claim will be reviewed to identify that the priority date on the claim form is complete and consistent with the submitted documentation.

    (a)  When no specific day, month, season, or year date is on the claim form, information in the claim file will be checked to see if a complete priority date exists.

    (b)  The priority date on the claim form will be compared with the priority date referred to in the submitted documentation.

(4)  When the claimed priority date is inconsistent the department will gather further facts and data pertaining to the specific claim.  The claimant may be contacted pursuant to Rule 6.XIII.  Discrepancies in the claimed priority date that may require claimant contact include, but are not limited to:

    (a)  the claim identifies or suggests more than one priority date;

    (b)  documentation to support a decreed or filed appropriation right was not submitted;

    (c)  no priority date or exact year date has been claimed;

    (d)  the priority date on the claim form of a decreed right differs or cannot be identified from the submitted documentation;

    (e)  the priority date on the claim form of a filed appropriation (1885 surface water statutes) is other than the earliest date on the document;

    (f)  the priority date on the claim form of a filed appropriation (1962 groundwater statutes) is not supported with documentation showing filing at the courthouse.  For purposes of this examination, springs will be presumed to be undeveloped, unless documentation shows otherwise;

    (g)  the priority date on the claim form of a use right is other than the date of first use or as specified in the documentation;

    (h)  the source or P.O.U. on the claim form differs significantly from the source or P.O.U. provided in the priority date documentation;

(i) duplicate claims of the same water right by the same individual are identified;

(j) the claimed priority date is post-June 30, 1973;

(k) the claimed priority date is earlier than settlement within a basin or subbasin according to historical records.

(l) a sprinkler system is claimed with a priority date preceding 1950.

(5) The claimed type of water right or priority date will not be changed as a result of the department's examination unless:

(a) amended by the claimant;

(b) clarified by the department;

(c) to complete day, month, or season date when the claimed priority date is incomplete.
(i) If no day date, the last day of the month will be used.
(ii) If no month date, the last month of the year will be used.
(iii) If a season is claimed, the following dates will be used:

(A) Fall - December 19th
(B) Winter - March 19th
(C) Spring - June 19th
(D) Summer - September 19th

(6) In the summary report to the water court, the department shall provide data and facts concerning priority date and type of historical right including:

(a) an abstract of the water right listing:
(i) the claimed type of historical right or clarified claimed type of right;
(ii) the claimed priority date or clarified claimed priority date, or the priority date as specified in these rules.
(iii) a notation of changes made as a result of the department's examination;

(b) the department's examination information which may include:
(i) an identification of unique aspects or features of the priority date;
(ii) an issue statement when no priority date or exact year date has been claimed.

Example: A SPECIFIC PRIORITY DATE CANNOT BE IDENTIFIED WITHOUT ADDITIONAL INFORMATION.

(iii)  issue statements concerning discrepancies in the claimed priority date or claimed type of historical right as specified in this rule;

(iv)  an issue statement when the claimed type of historical right is other than use, filed, or decreed;

(v)  an issue statement when a use right or a filed right has been claimed on a formerly decreed source;

(vi)  an identification of any other pertinent facts, data and issues.

RULE 2.IX.  FLOW RATE

(1)  Facts and information concerning flow rate for the claimed system will be identified using information in the claim along with other data gathered by the department.

(2)  The guideline for irrigation within a basin or subbasin will be the flow rate necessary to reasonably irrigate one acre of crop.

(a)  The flow rate guideline will be 17.0 gallons per minute per acre (gpm/ac) and was based on:
(i)  the commonly accepted method of irrigation;
(ii)  the peak consumptive use of alfalfa during a drought year growing season; and,
(iii)  a reasonable efficiency for the method of irrigating the field.

(b)  The flow rate guideline for reservoirs associated with irrigation use claims will be as follows:
(i)  For on-stream reservoirs a flow rate guideline will not be identified, and a flow rate will not be decreed as specified in §85-2-234, MCA.  The following remark shall be added to the water right abstract:

"NO FLOW RATE HAS BEEN DECREED FOR THIS USE FROM THIS ON-STREAM RESERVOIR."

(ii) For off-stream reservoirs the flow rate guideline for storage will be the capacity of the diversion and conveyance system.

(c)  The department, in conjunction with the water court, may hold public meetings within the basin or subbasin to gather further facts, data, and public comment so that reasonable water use guidelines are identified for the area.  See Rule 6.I.

(3)  When the claimed flow rate differs from the guideline, the department will gather further data and facts in an attempt to determine the actual flow rate for the specific claim.  The claimant may be contacted pursuant to Rule 6.XIII.  In addition, a field investigation may be conducted pursuant to Rule 6.XIV.  Discrepancies that may require claimant contact include, but are not limited to:

(a)  the claimed flow rate on a per acre basis exceeds the guideline using the acreage identified by the department;

(b)  the claimed flow rate appears insufficient to satisfy the purpose.

(4)  At the direction of the water court, changes may be made to the claimed flow rates for the following types of irrigation claims.  No changes will be made to formerly decreed flow rates under this section.

(a)  For irrigation claims based on filed appropriation or use rights, flow rates exceeding 17 gpm/ac will be reduced to this guideline unless:

34

(i) information in the claim file clearly substantiates the claimed flow rate;

(ii) information to support the actual flow rate is obtained through claimant contact.

When a claimed flow rate is reduced to the 17 gpm/ac guideline, the following remark shall be added to the water right abstract:

"THE FLOW RATE OF THIS CLAIM HAS BEEN REDUCED TO THE GUIDELINE OF 17 GPM PER ACRE. THE FLOW RATE MAY BE CHANGED UPON PROPER OBJECTION."

(b) For direct flow water spreading irrigation systems without reservoirs, a flow rate will not be decreed as specified in §85-2-234, MCA. The following remark shall be added to the water right abstract:

"NO FLOW RATE HAS BEEN DECREED BECAUSE THIS USE CONSISTS OF DIRECT FLOW WATER SPREADING."

(c) For subirrigation or natural overflow, a flow rate will not be decreed as specified in §85-2-234, MCA. One of the following remarks shall be added to the water right abstract:

"NO FLOW RATE HAS BEEN DECREED FOR THIS USE OF SUBIRRIGATION".

"NO FLOW RATE HAS BEEN DECREED FOR THIS NATURAL OVERFLOW METHOD OF IRRIGATION."

(5) When the flow rate of a formerly decreed water right has been exceeded by respectively filed claims for irrigation and other use, the parties involved will be contacted pursuant to Rule 6.XIII. If the parties do not reach agreement among themselves to correct the overclaimed flow rate, the issue shall be identified in the department's summary report to the water court.

(6) The claimed flow rate will not be changed as a result of the department's examination unless:

(a) amended by the claimant;

(b) clarified by the department;

(c) as authorized in parts (2)(b) and (4) of this rule;

(d) standardized as to units of measure according to Rule 1.V.

(7) In the summary report to the water court, the department shall provide data and facts concerning flow rate including:

(a) an abstract of the water right listing;
(i) the claimed flow rate, clarified claimed flow rate, or changes authorized by this rule;
(ii) the notation of changes made as a result of the department's examination;

35

(b)  the department's examination information which may include:

(i)  an identification of unique aspects or features of the flow rate;

(ii)  an issue statement when the claimed flow rate appears excessive for the specific application and delivery methods;

(iii) an identification of any other pertinent facts, data and issues.

RULE 2.X.  VOLUME

(1)  Facts and information concerning the volume of the claimed system will be identified using information in the claim along with other data gathered by the department.

(2)  The climatic area of the claimed place of use will be identified on the abstract of each irrigation right.  The climatic area identification will be determined from the United States Department of Agriculture Soil Conservation Service climatic map of Montana.

(3)  For direct flow irrigation claims, excepting water spreading systems and irrigation systems involving reservoirs, a volume will not be decreed as specified in §85-2-234, MCA.  The following remark shall be added to the abstract of direct flow irrigation rights.

"THE TOTAL VOLUME OF THIS RIGHT SHALL NOT EXCEED THE AMOUNT HISTORICALLY USED FOR A BENEFICIAL PURPOSE."

(4)  If a direct flow irrigation claim has been previously decreed by volume, the volume shall be included on the water right abstract.  The following remark shall be added:

"THIS VOLUME WAS PREVIOUSLY DECREED IN CASE NUMBER _____, _____ COUNTY, MONTANA."

(5)  The volume guideline for water spreading irrigation systems without reservoirs will be the peak consumptive use of alfalfa in a drought year growing season.

(a)  The peak consumptive uses of alfalfa in a drought year growing season, listed by climatic area are:
    (i)   Climatic Area I     2.3 acre-feet per acre
    (ii)  Climatic Area II    2.0 acre-feet per acre
    (iii) Climatic Area III   1.9 acre-feet per acre
    (iv)  Climatic Area IV    1.7 acre-feet per acre
    (v)   Climatic Area V     1.4 acre-feet per acre

(b)  When the claimed volume on a water spreading claim differs from the guideline, the department will gather further facts and data.  The claimant may be contacted pursuant to Rule 6.XIII.  In addition, a field investigation may be conducted pursuant to Rule 6.XIV.

(c)  The claimed volume on water spreading claims will not be changed as a result of the department's examination unless:
    (i)   amended by the claimant;
    (ii)  clarified by the department;
    (iii) standardized as to units of measure according the Rule 1.V.

(6)  A volume guideline for irrigation systems involving reservoirs will not be identified.  Facts and data will be collected by the department following the procedures specified in Rule 2.V. in an attempt to determine:

(a) maximum storage capacity;

(b) estimated volume of use per year;

(c) estimate of evaporation and seepage.

(7) In the summary report to the water court, the department shall provide data and facts concerning volume, including:

(a) An abstract of the water right listing:
(i) the claimed volume, clarified claimed volume, or changes authorized by this rule;
(ii) the notation of changes made as a result of the department's examination;

(b) the department's examination information which may include:
(i) an identification of unique aspects or features of the volume;
(ii) an issue statement when the claimed volume appears excessive for water spreading irrigation systems;
(iii) an identification of any pertinent facts, data, and issues.

38

RULE 2.XI.   PERIOD OF USE

(1)   Facts and information concerning the period of use will be identified using information in the claim along with other data gathered by the department.   The period of use will be identified by the earliest month and day to the latest month and day that water has been used within any one calender year.

(a)   The claimed period of use of flood systems, sprinkler systems, and natural subirrigation will be compared to the following irrigation period of use guidelines:
  (i)    Climatic Area I:   March 15 to November 15.
  (ii)   Climatic Area II:  April 1 to October 30.
  (iii)  Climatic Area III: April 15 to October 15.
  (iv)   Climatic Area IV:  April 20 to October 10.
  (v)    Climatic Area V:   April 25 to October 5.

(b)   The period of use guideline for claims involving reservoirs, water spreading systems, and natural overflow will be year round use.

(c)   The documentation will be examined for conditions or limitations that may exist on the period of use.

(2)   When the claimed period of use is incomplete or inconsistent, the department will gather further facts and data pertaining to the specific claim.   The claimant may be contacted pursuant to Rule 6.XIII.   Discrepancies in the claimed period of use that may require claimant contact include, but are not limited to:

(a)   no period of use is claimed;

(b)   the claimed period of use differs significantly from the period of use guidelines specified in this rule;

(c)   the period of use on the claim form differs significantly from the period of use specified in the documentation.

(3)   The claimed period of use of a water right will not be changed as a result of the department's examination unless:

(a)   amended by the claimant;

(b)   clarified by the department.

(4)   In the summary report to the water court, the department shall provide data and facts concerning period of use including:

(a)   an abstract of the water right listing:
    (i)   the claimed period of use or clarified claimed period of use;
    (ii)  a notation of changes made as a result of the department's examination;

(b)   the department's examination information which may include:
    (i)   an identification of unique aspects or features of the period of use;

39

(ii) issue statements concerning discrepancies in the claimed period of use as specified in this rule;

(iii) an identification of any other pertinent facts, data, and issues.

RULE 3.I. REFERENCE TO IRRIGATION PROCEDURES

Except as specifically provided in this sub-chapter the department's examination of domestic claims shall follow the procedures described in sub-chapter 2 for irrigation claims. This sub-chapter contains specific examination procedures for the following elements of a water right.

(1) Place of use.

(2) Flow rate and volume.

(3) Period of use.

RULE 3.I. REFERENCE TO IRRIGATION PROCEDURES

RULE 3.II.   PLACE OF USE (P.O.U.)

(1)   The place of use for domestic purposes will be identified and described to the nearest reasonable and concise legal land description and the associated irrigated acreage.   The P.O.U. may include the house, garden or other facilities for this purpose.

(a)   The information in the claim, topographic maps, aerial photos, Water Resources Survey information, county land ownership records, as well as other sources available to the department may be used to review the claimed P.O.U. and associated claimed acreage.

(b)   When the claimed legal land description or claimed acreages cannot be substantiated, the department will gather further facts and data.   The claimant may be contacted for additional information pursuant to Rule 6.XIII.   Discrepancies in the claimed place of use that may require claimant contact include, but are not limited to:

(i)   no legal land description is given for the claimed place of use;

(ii)   the claimed legal land description or claimed acreage is vague or incomplete;

(iii)   the claimed legal land description or claimed acreage is inconsistent with the source, point of diversion, or purpose claimed;

(iv)   a claimed P.O.U. of one party overlapping any portion of the claimed P.O.U. of another party, when identified.

(2)   The claimant's map(s) and at least one other post-priority date data source, when available, will be used to examine the acreage claimed.

(a)   When the acreage claimed exceeds a reasonable acreage, generally 5 acres, for lawn and garden or shelter belt purposes, the claimant will be contacted pursuant to Rule 6.XIII.

(b)   When the acreage identified by the department differs from the acreage claimed by more than the amount specified in exhibit B, the claimant will be contacted pursuant to Rule 6.XIII.

(3)   The department will use the information in the claim as well as other information to identify the number of households served by the water right in the place of use.

(a)   The number of households may be calculated based on:

(i)   the number of persons or households indicated in the claim (five persons will be considered equivalent to one household);

(ii)   the number of dwellings indicated on an aerial photograph of the place of use.

(b)   When the number of households cannot be identified from the claim or information available, the claimant will be contacted pursuant to Rule 6.XIII.

(4)  The claimed place of use of a water right will not be changed as a result of the department's examination unless:

(a)  amended by the claimant;

(b)  clarified to the nearest reasonable and concise legal land description.

(5)  In the summary report to the water court, the department shall provide data and facts concerning place of use including:

(a)  an abstract of the water right listing:
(i)  the claimed irrigated acreage or clarified claimed irrigated acreage, if any;
(ii)  the claimed legal land description or the clarified claimed legal land description
(iii)  additional legal land descriptions identified by the department such as government lots, subdivisions, certificates of survey, homestead entry surveys, and mineral surveys;
(iv)  a notation of changes made as a result of the department's examination;

(b)  the department's examination information which may include:
(i)  an identification of unique aspects or features of the place of use;
(ii)  the legal land description and acreage found from a data source, when that source differs from the acreage claimed by more than the amount specified in exhibit B;
(iii)  an identification of any other pertinent facts, data, and issues.

## RULE 3.III.   FLOW RATE AND VOLUME

(1)   Facts and information concerning flow rate and volume for domestic use will be identified using information in the claim along with other data gathered by the department.

(2)   The flow rate and volume guidelines for domestic use within a basin or subbasin will be as follows:

(a)   The flow rate guideline that would reasonably supply domestic use will be 35 gallons per minute.

(b)   The volume guideline will be one acre-foot per household and two acre-feet per acre of lawn and garden or shelter belt up to a reasonable amount for domestic irrigation.

(c)   The flow rate and volume guidelines for reservoirs associated with domestic use claims will be as follows:
    (i)   For on-stream reservoirs a flow rate guideline will not be identified, and a flow rate will not be decreed as specified in §85-2-234, MCA.  The following remark shall be added to the water right abstract.

"NO FLOW RATE HAS BEEN DECREED FOR THIS USE FROM THIS ON-STREAM RESERVOIR."

(ii)   For off-stream reservoirs the flow rate guideline for storage wil be the capacity of the diversion and conveyance system.
    (iii)   The volume guideline will be one acre-foot per household and two acre-feet per acre of lawn and garden or shelter belt, plus a reasonable amount for seepage and evaporation.

(3)   When the claimed flow rate or volume differs from the guideline, the department will gather further data and facts in an attempt to determine the actual flow rate or volume for the specific claim.  The claimant may be contacted pursuant to Rule 6.XIII.  Discrepancies that may require claimant contact include, but are not limited to:

(a)   the number of households or the number of acres of domestic irrigation cannot be determined;

(b)   the claimed flow rate exceeds the guideline;

(c)   the claimed volume exceeds the guideline for number of households plus lawn and garden or shelter belt acreage;

(d)   the claimed flow rate or claimed volume appear insufficient to satisfy the purpose.

(4)   The claimed flow rate of a water right will not be changed as a result of the department's examination unless:

(a)   amended by the claimant;

(b)   clarified by the department;

(c)   as authorized in part (2)(c) of this rule;

(d)   standardized as to units of measure according to Rule 1.V.

(5)   In the summary report to the water court, the department shall provide data and facts concerning flow rate and volume including:

(a)   an abstract of the water right listing:
(i)   the claimed flow rate or the clarified claimed flow rate, or changes authorized by this rule;
(ii)   the claimed volume or clarified claimed volume, or changes authorized by this rule;
(iii)   a notation of changes made as a result of the department's examination;

(b)   the department's examination information which may include:
(i)   an identification of unique aspects or features of the flow rate and volume;
(ii)   an issue statement when the claimed flow rate or volume appears excessive for this purpose;
(iii)   the feasible volume when the claimed flow rate cannot deliver the claimed volume during the claimed period of use;
(iv)   an identification of any other pertinent facts, data, and issues.

RULE 3.IV.    PERIOD OF USE

(1)  Facts and information concerning the period of use for domestic purposes will be identified using the information in the claim together with any other data gathered by the department.  The period of use will be identified by the earliest month and day to the latest month and day that water has been used within any one calendar year.

(a)  The period of use guideline for domestic purposes that include households will be year round use.

(b)  The irrigation period of use guidelines specified in Rule 2.XI. will be the criteria for examining domestic irrigation without households.

(c)  The period of use guideline for domestic and domestic irrigation purposes involving a reservoir will be year round use.

(d)  The documentation will be examined for conditions or limitations that may exist on the period of use.

(2)  When the claimed period of use is incomplete or inconsistent, the department will gather further facts and data pertaining to the specific claim.  The claimant may be contacted pursuant to Rule 6.XIII.  Discrepancies in the claimed period of use that may require claimant contact include, but are not limited to:

(a)  no period of use is claimed.

(b)  the claimed period of use differs significantly from the period of use guidelines specified in this rule.

(c)  the period of use on the claim form differs significantly from the period of use specified in the documentation.

(3)  The claimed period of use of a water right will not be changed as a result of the department's examination unless:

(a)  amended by the claimant;

(b)  clarified by the department.

(4)  In the summary report to the water court, the department shall provide data and facts concerning period of use including:

(a)  an abstract of the water right listing:
(i)  the claimed period of use or the clarified claimed period of use;
(ii)  a notation of changes made as a result of the department's examination;

55

(b)  the department's examination information which may include:

(i)  an identification of unique aspects or features of the period of use;

(ii)  issue statements concerning discrepancies in the claimed period of use as specified in this rule;

(iii)  an identification of any other pertinent facts, data, and issues.

## Chapter 4.    Stockwater Claim

RULE 4.I.    REFERENCE TO IRRIGATION PROCEDURES

Except as specifically provided in this sub-chapter the department's examination of stockwater claims shall follow the procedures described in sub-chapter 2 for irrigation claims.  This sub-chapter contains specific examination procedures for the following elements of a water right.

      (1)   Point of diversion.

      (2)   Place of use.

      (3)   Flow rate and volume.

      (4)   Period of use.

RULE 4.I.    REFERENCE TO IRRIGATION PROCEDURES

## RULE 4.II.  POINT OF DIVERSION (P.O.D.)

(1)  The department's examination of the claimed P.O.D. for stockwater claims shall follow the procedures described in Rule 2.III.  In addition, the following procedures will apply to the examination of P.O.D. for stockwater claims.

(2)  For direct instream surface water stock use, the legal land description of the P.O.D. will be the same as the legal land description of the P.O.U.

(3)  The claimed P.O.D. may be clarified by the department so that the P.O.D. and P.O.U. legal land descriptions for direct instream surface water stock use will be equivalent.

RULE 4.III.   PLACE OF USE (P.O.U.)

(1)   The place of use for stock purposes will be identified and described to the nearest reasonable and concise legal land description.   The P.O.U. is the actual place where the stock drink the water.

(a)   The information in the claim, topographic maps, aerial photos, Water Resources Survey information, county land ownership records, as well as other sources available to the department may be used to review the P.O.U. legal land descriptions.

(b)   When the claimed legal land description cannot be substantiated, the department will gather further facts and data.   The claimant may be contacted for additional information pursuant to Rule 6.XIII.   Discrepancies in the claimed place of use that may require claimant contact or a field investigation include, but are not limited to:

(i)   no legal land description is given for the claimed place of use;

(ii)   the claimed legal land description is incomplete;

(iii) the claimed legal land description is inconsistent with the source, point of diversion, or purpose claimed.

(2)   The claimed place of use of a water right will not be changed as a result of the department's examination unless:

(a)   amended by the claimant;

(b)   clarified to the nearest reasonable and concise legal land description;

(c)   clarified so that the P.O.U. and P.O.D. legal land descriptions for direct instream surface water stock use will be equivalent.

(3)   In the summary report to the water court, the department shall provide data and facts concerning place of use including:

(a)   an abstract of the water right listing:

(i)   the claimed legal land description or clarified claimed legal land description;

(ii)   a notation of changes made as a result of the department's examination;

(iii)   additional legal land descriptions identified by the department such as government lots, subdivisions, certificates of survey, homestead entry surveys, and mineral surveys;

(b)   the department's examination information which may include:

(i)   an identification of unique aspects or features of the place of use;

(ii)   the legal land description when the data gathered by the department differs from that claimed;

(iii)   an identification of any other pertinent facts, data, and issues.

62

## RULE 4.IV.   FLOW RATE AND VOLUME

(1)   Facts and information concerning flow rate and volume for stockwater use will be identified using information in the claim along with other data gathered by the department.

(2)   The flow rate guideline for stock use within a basin or subbasin will be as follows:

(a)   The flow rate guideline for wells, springs, pumped diversions, or gravity flow pipelines will be 35 gallons per minute.

(b)   There will be no flow rate guideline for direct surface water stock use.  For direct surface water stock use, a flow rate will not be decreed as specified in §85-2-234, MCA.  The following remark shall be added to the water right abstract.

"NO FLOW RATE HAS BEEN DECREED BECAUSE THIS USE CONSISTS OF STOCK DRINKING DIRECTLY FROM THE SOURCE."

(c)   The flow rate guideline for reservoirs associated with stockwater use claims will be as follows.
     (i)   For on-stream reservoirs a flow rate guideline will not be identified, and a flow rate will not be decreed as specified in §85-2-234, MCA.  The following remark shall be added to the water right abstract.

"NO FLOW RATE HAS BEEN DECREED FOR THIS USE FROM THIS ON-STREAM RESERVOIR."

     (ii)  For off-stream reservoirs the flow rate guideline for storage wil be the capacity of the diversion and conveyance system.

(3)   The volume guideline for stock use within a basin or subbasin will be as follows:

(a)   The volume guideline for wells, springs, pumped diversions, or gravity flow pipelines will be 1.5 acre-feet per stock tank or point of use.  Multiple P.O.U.'s, feedlots, and multiple points of use will have an adjusted volume guideline in increments of 1.5 acre-feet.

(b)   There will be no volume guideline for direct surface water stock use.  For direct surface water stock use, a volume will not be decreed as specified in §85-2-234, MCA.  The following remark shall be added:

"NO VOLUME HAS BEEN DECREED BECAUSE THIS USE CONSISTS OF STOCK DRINKING DIRECTLY FROM THE SOURCE.  THIS RIGHT INCLUDES THE AMOUNT OF WATER CONSUMPTIVELY USED FOR STOCKWATERING PURPOSES AT THE RATE OF 30 GALLONS PER DAY PER ANIMAL UNIT.  ANIMAL UNITS SHALL BE BASED ON REASONABLE CARRYING CAPACITY AND HISTORIC USE OF THE AREA SERVICED BY THIS WATER SOURCE."

63

(c) A volume guideline for stockwater claims involving reservoirs will not be identified. Facts and data will be collected by the department following the procedures specified in Rule 2.V. in an attempt to determine:

> (i) maximum storage capacity;
> (ii) estimated volume of use per year;
> (iii) estimate of evaporation and seepage.

(4) When the claimed flow rate or volume differs from the guideline, the department will gather further data and facts in an attempt to determine the actual flow rate or volume for the specific claim. The claimant may be contacted pursuant to Rule 6.XIII. Discrepancies that may require claimant contact include, but are not limited to:

> (a) the claimed flow rate or claimed volume exceeds the guideline established for wells, springs, pumped diversion or gravity flow pipelines;

> (b) the claimed flow rate or claimed volume for wells, springs, pumped diversion or gravity flow pipelines appears insufficient to satisfy the purpose;

> (c) the volume guideline cannot be determined because the number of points of use cannot be identified.

(5) The claimed flow rate and claimed volume of a water right will not be changed as a result of the department's examination unless:

> (a) amended by the claimant;

> (b) clarified by the department;

> (c) as authorized in parts (2)(b), (2)(c), and (3)(b) of this rule;

> (d) standardized as to units of measure according to Rule 1.V.

(6) In the summary report to the water court, the department shall provide data and facts concerning flow rate and volume including:

> (a) an abstract of the water right listing:
> (i) the claimed flow rate or clarified claimed flow rate, or changes authorized by this rule;
> (ii) the claimed volume or clarified claimed volume, or changes authorized by this rule;
> (iii) a notation of changes made as a result of the department's examination;

> (b) the department's examination information which may include:
> (i) an identification of unique aspects or features of the flow rate and volume;
> (ii) an issue statement when the claimed flow rate or volume appears excessive for this purpose;
> (iii) the feasible volume when the claimed flow rate cannot deliver the claimed volume during the claimed period of use;
> (iv) an identification of any other pertinent facts, data, and issues.

RULE 4.V.   PERIOD OF USE

(1)   Facts and data concerning period of use for stockwater purposes will be identified using information in the claim along with other data gathered by the department.  The period of use will be identified by the earliest month and day to the latest month and day that water has been used within any one calendar year.

(a)   The period of use guideline for stockwater will be year round use.

(b)   The documentation will be examined for conditions or limitations that may exist on the period of use.

(2)   When the claimed period of use is incomplete or inconsistent, the department will gather further facts and data pertaining to the specific claim.  The claimant may be contacted pursuant to Rule 6.XIII.  Discrepanies in the claimed period of use that may require claimant contact include, but are not limited to:

(a)   no period of use is claimed;

(b)   the claimed period of use differs significantly from the period of use guideline specified in this rule;

(c)   the period of use on the claim form differs significantly from the period of use specified in the documentation.

(3)   The claimed period of use of a water right will not be changed as a result of the department's examination unless:

(a)   amended by the claimant;

(b)   clarified by the department.

(4)   In the summary report to the water court, the department shall provide data and facts concerning period of use including:

(a)   an abstract of the water right listing:
(i)   the claimed period of use or the clarified claimed period of use;
(ii)   a notation of changes made as a result of the department's examination;

(b)   the department's examination information which may include:
(i)   an identification of unique aspects or features of the period of use;
(ii)   issue statements concerning discrepancies in the claimed period of use as specified in this rule;
(iii)   an identification of any other pertinent facts, data, and issues.

RULE 5.1.    REFERENCE TO IRRIGATION PROCEDURES

Except as specifically provided in this sub-chapter the department's examination of other uses claims shall follow the procedures described in sub-chapter 2 for irrigation claims.    This sub-chapter contains specific examination procedures for the following elements of a water right.

      (1)    Purpose.

      (2)    Place of use.

      (3)    Flow rate and volume.

      (4)    Period of use.

RULE 5.1.    REFERENCE TO IRRIGATION PROCEDURES

RULE 5.II.  PURPOSE

(1)  The department's examination of the claimed purpose for other uses claims shall follow the procedures described in Rule 2.I.  In addition, the following procedures will apply to the examination of purpose for other use claims.

(2)  Water right purposes categorized as "other uses" and governed by this rule include all uses of water for beneficial purposes other than stockwater, domestic, and irrigation.  For example, these may include according to court decisions:

      (a)  agricultural spraying;

      (b)  commercial;

      (c)  fire protection;

      (d)  fish and wildlife;

      (e)  fish raceways;

      (f)  industrial;

      (g)  mining;

      (h)  municipal;

      (i)  navigation;

      (j)  power generation;

      (k)  recreation;

      (l)  wildlife.

(3)  A questionnaire requesting data concerning specific other uses may be sent to claimants.  The questionnaire serves to gather facts and data describing the history, status, and operation of the claimed purpose.

# RULE 5.III.  PLACE OF USE (P.O.U.)

(1)  The place of use for other use purposes will be identified and described to the nearest reasonable and concise legal land description.

(a)  The information in the claim, aerial photos, Water Resources Survey information, county land ownership records as well as other sources available to the department may be used to review the P.O.U. legal land descriptions.

(b)  When the claimed P.O.U. cannot be substantiated, the department will gather further facts and data.  The claimant may be contacted pursuant to Rule 6.XIII.  In addition, a field investigation may be conducted, pursuant to Rule 6.XIV.  Discrepancies in the claimed P.O.U. that may require claimant contact or a field investigation include, but are not limited to:
(i)  no legal land description is given for the claimed place of use;
(ii)  the claimed legal land description is vague or incomplete;
(iii) the claimed legal land description is inconsistent with the source, point of diversion, or purpose claimed;

(3)  The claimed legal land description will not be changed as a result of the department's examination unless:

(a)  amended by the claimant;

(b)  clarified to the nearest reasonable and concise legal land description.

(4)  In the summary report to the water court, the department shall provide data and facts concerning P.O.U. including:

(a)  an abstract of the water right listing:
(i)  the claimed legal land description or clarified claimed legal land description;
(ii)  a notation of changes made as a result of the department's examination;
(iii)  additional legal land descriptions identified by the department such as government lots, subdivisions, certificates of survey, homestead entry surveys, and mineral surveys;

(b)  the department examination information which may include:
(i)  an identification of unique aspects or features of the place of use;
(ii)  the legal land description when the data gathered by the department differs from that claimed;
(iii)  an identification of any other pertinent facts, data, and issues.

72

RULE 5.IV.   FLOW RATE AND VOLUME

(1)   The flow rate and volume guidelines for other use claims will be identified as those which appear reasonable and customary for the specific purpose using information in the claim and other data gathered by the department.

(a)   There will be no flow rate guideline for claims filed for fish and wildlife, wildlife, recreation, or navigation purposes except for, but not limited to, the following:
(i)    pumped diversions;
(ii)   headgates;
(iii)  gravity flow pipelines.

If a flow rate has been claimed, the department will identify in the summary report that the claimed flow rate has not been examined.

(b)   The flow rate guideline and volume guideline for reservoirs associated with other use claims wil be as follows.
(i)    For on-stream reservoirs a flow rate guideline will not be identified, and a flow rate will not be decreed as specified in §85-2-234, MCA.  The following remark shall be added to the water right abstract.

"NO FLOW RATE HAS BEEN DECREED FOR THIS USE FROM THIS ON-STREAM RESERVOIR."

(ii) For off-stream reservoirs the flow rate guideline for storage will be the capacity of the diversion and conveyance system.
(iii) A volume guideline for other use claims involving reservoirs will not be identified.  Facts and data will be collected by the department following the procedures specified in Rule 2.V. in an attempt to determine:
(A)   maximum storage capacity;
(B)   estimated volume of use per year;
(C)   estimate of evaporation and seepage.

(2)   When the claimed flow rate or claimed volume differs from the guideline for the identified purpose, the department will gather further data and facts in an attempt to determine the actual flow rate or volume for the specific claim.  The claimant may be contacted pursuant to Rule 6.XIII.  In addition, a field investigation may be conducted pursuant to Rule 6.XIV. Discrepancies that may require claimant contact or a field investigation include, but are not limited to:

(a)   a guideline for flow rate or volume cannot be determined from the available information;

(b)   the claimed flow rate or claimed volume exceeds the guideline for the identified purpose;

(c)   the claimed flow rate or claimed volume appear insufficient to satisfy the identified purpose.

(3) When the flow rate of a formerly decreed water right has been exceeded by respectively filed irrigation and other use claim(s), the parties involved will be contacted pursuant to Rule 6.XIII. If the parties do not reach agreement among themselves and correct the overclaimed flow rate, the issue shall be identified in the department's summary report to the water court.

(4) The claimed claimed flow rate and claimed volume of a water right will not be changed as a result of the department's examination unless:

(a) amended by the claimant;

(b) clarified by the department;

(c) as authorized in part (1)(b) of this rule;

(d) standardized as to units of measure according to Rule 1.V.

(5) In the summary report to the water court, the department shall provide data and facts concerning flow rate and volume including:

(a) an abstract of the water right listing:
(i) the claimed flow rate or clarified claimed flow rate, or changes authorized by this rule;
(ii) the claimed volume or clarified claimed volume, or changes authorized by this rule;
(iii) a notation of changes made as a result of the department's examination;

(b) the department's examination information which may include:
(i) an identification of unique aspects or features of the flow rate and volume;
(ii) an issue statement when the claimed flow rate or volume appears excessive for this purpose;
(iii) the feasible volume when the claimed flow rate cannot deliver the claimed volume during the claimed period of use;
(iv) an identification of any other pertinent facts, data, and issues.

RULE 5.V.   PERIOD OF USE

(1)   Facts and data concerning period of use for other use purposes will be identified using information in the claim together with other data gathered by the department.  The period of use will be identified by the earliest month and day to the latest month and day that water has been used within any one calendar year.

(a)   The usual and customary period of use for other use claims will vary for the specific purpose identified.  The claimed period of use will be reviewed for reasonableness for the purpose identified.

(b)   The period of use guideline for other use claims involving a reservoir will be year round use.

(c)   The documentation will be examined for conditions or limitations that may exist on the period of use.

(2)   When the claimed period of use is incomplete or inconsistent, the department will gather further facts and data pertaining to the specific claim.  The claimant may be contacted pursuant to Rule 6.XIII.  Discrepancies in the claimed period of use that may require claimant contact include, but are not limited to:

(a)   no period of use is claimed;

(b)   the claimed period of use differs significantly from that which is usual and customary for the specific purpose identified;

(c)   insufficient information is available to determine the usual and customary period of use for the purpose identified.

(d)   the period of use on the claim form differs significantly from the period of use specified in the documentation.

(3)   The claimed period of use of a water right will not be changed as a result of the department's examination unless:

(a)   amended by the claimant;

(b)   clarified by the department.

(4)   In the summary report to the water court, the department shall provide data and facts concerning period of use including:

(a)   an abstract of the water right listing:
(i)   the claimed period of use or the clarified claimed period of use;
(ii)   a notation of changes made as a result of the department's examination;

(b)   the department's examination information which may include:

        (i)   an identification of unique aspects or features of the period of use;

        (ii)   issue statements concerning the discrepancies in the claimed period of use as specified in this rule;

        (iii)   an identification of any other pertinent facts, data, and issues.

## RULE 6.I. PUBLIC MEETINGS

(1) The department, if directed by the water court pursuant to §85-2-243, may conduct public meetings in each basin or subbasin. The purpose of these meetings may include:

    (a) gathering facts and data related to flow rate, volume, and period of use for irrigation that may include the usual and customary method of irrigation, crops grown and growing season within a basin or subbasin.

    (b) gathering facts and data related to flow rate, volume, and period of use for other uses of water within a basin or subbasin.

    (c) gathering facts and data addressing any other specific issues that may affect the basin or subbasin.

(2) The department may conduct public meetings in each basin or subbasin to provide the public with information on availability of materials at the field offices and any technical information or procedures used by the department during examination. These meetings may be held in conjunction with the water court.

(3) Public meetings will be held at a time and place appropriate to the material being presented and convenient to the participants.

(4) Meetings will be announced using one or more of the following: radio stations, newspapers, or television stations which have general coverage in the appropriate area. In addition, notices may be posted in various public locations in the area. The water court will be notified in writing at least 10 working days prior to announcement.

## RULE 6.II.   CLARIFICATION

(1)   Elements of a water right may be clarified during the department's examination of claims to make elements complete, clear, concise and interpretable as long as the intent of the claimed information is unchanged.   Changes to claimed data made as clarifications will be denoted on the water right abstract.

(2)   Discrepancies in the claimed information such as the following, may be edited for standardization and consistency.

(a)   Similar purposes are not referenced consistently.

(b)   Owner names and addresses are not consistent.

(c)   P.O.D. and P.O.U. claimed legal land descriptions are not described to the nearest reasonable and concise legal land description.

(d)   Common points or similar means of diversion are not referenced consistently.

(e)   Source names are not referenced consistently.

(f)   P.O.U. and P.O.D. legal land descriptions for direct surface water stock use are not equivalent.

(3)   When a claim form exhibits clerical errors by the claimant such as the following and the claimed intent is clear, the discrepancy may be corrected in the computer record without requiring claimant contact.   The correction will be clearly denoted by the department in the claim file.

(a)   Legal land descriptions are reversed.

(b)   Priority date, period of use, source, P.O.D., etc. are not on the claim form but are clearly stated in the documentation.

(c)   N, S, E, or W are not indicated in the legal land description for township or range.

(d)   Units for flow rate are not on the claim form but are clearly indicated in the documentation.

(4)   When a claim exhibits confusion or disagreement such as the following and the claimed intent is unclear, the department will contact the claimant pursuant to Rule 6.XIII.   The correct interpretation of the claimed information will be clearly denoted by the department in the claim file. Clarifications of this type may be implemented upon instruction from the claimant.

(a)   Improper legal land descriptions were submitted for a clearly indicated P.O.U. or P.O.D.

(b)   Units for flow rate or volume are not indicated in the claim.

(c)   Claimed flow rate or volume units are inconsistent.

(d)   Legal land descriptions on the claim form and claimant's map disagree.

(e)   Documentation submitted with the claim indicates several priority dates.

(f)   Priority date in the documentation does not match priority date on claim form.

(5)   When an abstract of a claim exhibits clerical errors by the department such as the following, the discrepancy will be corrected in the computer record.

(a)   Claimed items were not entered into the computer.

(b)   Claimed items were entered into the computer incorrectly.

(c)   Claimed items were previously clarified incorrectly.

## RULE 6.III. AMENDMENTS TO CLAIMS

(1) A claimant may request and authorize a modification of the information in a claim prior to a decree being issued for the particular basin.

(2) A water court form or written request must be submitted by the claimant to authorize an amendment. An example water court amendment form is attached as Exhibit C.

   (a) The amendment request whether on the water court form or other written request, must include the amendment, the date, and the reasons for the amendment.

   (b) The amendment request must contain the notarized signature of at least one current owner of the right as listed in the centralized record system.

   (c) The amendment request may be supplemented with maps, letters, copies of documents, or other materials.

(3) An amendment received by the department will be processed in the following manner:

   (a) if received prior to the issuance of the summary report, it will be microfilmed, added to the claim file, and the respective elements will be amended in the centralized record system;

   (b) if received after the issuance of the summary report, it will be microfilmed, added to the claim file, and the water court will be notified;

   (c) if received after the issuance of the decree, it will be microfilmed and sent to the water court.

(4) The department will examine amendments according to the procedures in the rule governing the amended information.

(5) In the summary report to the water court, the department shall provide data and facts concerning the amended claim including:

   (a) an abstract of the water right listing:
      (i) the claimed or clarified claimed information as amended;
      (ii) a water court statement indicating the date the amendment was received and the water right element changed;

   Example: "THE FLOW RATE WAS AMENDED BY THE CLAIMANT ON 04/15/87."

   (b) the department's examination information which may include an identification of any other pertinent data, facts or issues.

83

## RULE 6.IV.   IMPLIED CLAIMS

(1)   Whenever a single claim appears to contain more than one right, the claim will be sent to the water court requesting a review for possible implied claims.

(2)   When the water court, in writing, authorizes implied claims to separate the individual rights, the claimant will be contacted pursuant to Rule 6.XIII. to assist in separating the rights into individual claims.

(3)   The following items and procedures will apply to implied claims.

(a)   The implied claim shall include the items required pursuant to §85-2-224, MCA.

(b)   The claimant's signature and notarization is preferred but not required since the water court has authorized the implied claim.

(c)   The date received on the implied claim will be the same date as that on the original claim.

(4)   Implied claims authorized by the water court shall be processed by the department as follows:

(a)   filing fees will be collected pursuant to §85-2-225, MCA.;

(b)   the original claim will be referenced on the implied claim;

(c)   the implied claim will be clarified, microfilmed, and entered into the centralized record system;

(d)   the implied claim will be examined by the department according to the rule governing the purpose identified.

(5)   In the summary report to the water court, the department shall provide data and facts concerning the implied claim including:

(a)   an abstract of the water right listing:
(i)   the implied claim information;
(ii)   a water court statement referencing to the original claim;

Example: THIS IMPLIED CLAIM WAS AUTHORIZED BY THE WATER COURT BASED ON INFORMATION IN CLAIM NO. W000000-00.

(b)   the department's examination information which may include an identification of any other pertinent facts, data, and issues.

84

## RULE 6.V.   LATE CLAIMS

(1)   Late claims submitted to the department shall include:

    (a)   the items required under §85-2-224, MCA;

    (b)   the claimant's signature and notarization;

    (c)   the date received posted on the claim form.

(2)   Late claims submitted to the department shall be processed as follows:

    (a)   filing fees will be collected pursuant to §85-2-225, MCA;

    (b)   the late claim will be clarified, microfilmed, and entered into the centralized record system;

    (c)   the late claim will be examined by the department according to the rule for the purpose identifed.

(3)  When a late claim is received for a basin where a decree has not been issued by the water court, the department's summary report to the water court shall provide data and facts concerning the late claim including:

    (a)   an abstract of the water right listing the late claim information;

    (b)   the department's examination information which may include:

        (i)   an issue statement indicating the date the late claim was received;

Example:   "CLAIM FILED LATE 04/15/87"

        (ii)   an identification of any other pertinent facts, data, and issues.

(4)   When a late claim is received after the issuance of the summary report or where a decree has been issued by the water court, the department will proceed as follows:

    (a)   immediate written notification will be sent to the water court including:
        (i)     the claim identification number;
        (ii)    basin code;
        (iii)  date received;

    (b)   after processing as in part (2) above, the original claim and the department's summary report will be sent to the water court.

## RULE 6.VI.    TERMINATION OF A CLAIM

(1)    The department shall terminate a water right claim only at the request of a claimant.

(a)    The water court form or other written request must be submitted by the claimant to terminate a claim.  An example water court termination form is attached as Exhibit D.

(b)    The termination request must be dated with notarized signatures of all current owners of the right as listed in the centralized record system.

(c)    The reason for the termination may be included.

(2)    A terminated claim will be processed in the following manner.

(a)    The termination request will be microfilmed and entered into the centralized record system.

(b)    The claimed information in the centralized record system will be retained but will be denoted as terminated for reference purposes.

(c)    The termination request and claim will be maintained by the department.

(3)    The owner name and address will be available to the water court for notice purposes.

(4)    In the summary report to the water court, the department shall provide data and facts concerning a terminated claim including:

(a)    an abstract of water right listing:
        (i)   the water right file number;
        (ii)  the owner name and address;
        (iii) a water court statement indicating a terminated claim;

EXAMPLE:   "THIS CLAIM WAS TERMINATED AT THE REQUEST OF THE CLAIMANT ON 04/15/87."

(b)    the department's examination information which may include an identification of any other pertinent facts, data, and issues.

RULE 6.VII.  TRANSFERS

(1)  The department shall process transfers of water rights in compliance with §§85-2-421 through 85-2-426, MCA.

(2)  When a water right transfer has been received, the department will revise the ownership of the right in the centralized record system as follows:

(a)  When the entire water right is transferred:
(i)  The name and address of the new owner will be listed as the owner of the right.
(ii)  The name and address of the owner filing the claim will be retained in the computer data base for notice purposes.
(iii)  Intermediate owners are not retained in the computer data base but may be found in the claim file.  A list of these owners will be maintained for notice purposes.

(b)  When the transfer splits the water right:
(i)  The water right will not be split until after the final decree.  Remarks will be added explaining the split for future reference.
(ii)  The name and address of a new owner will be added as an additional owner of the right.

(3)  Owners of transferred water rights will be notified by the department using the following procedures.

(a)  When a water right transfer is received before the water court has decreed the right, both buyer and seller owners will be notified of the receipt and recording of the transfer.

(b)  When a water right transfer is filed after the water court has decreed the right, the department will send a decree abstract and notice of availability to both the past and present owners, the water court, the water rights field office within the decreed basin, and clerks of court for counties within the decreed basin.

(4)  In the summary report to the water court, the department shall provide data and facts concerning a water right transfer including:

(a)  an abstract of the water right listing:
(i)  the current owners of the water right;
(ii)  a water court statement indicating the date the transfer was received;

Example:"NOTICE OF WATER RIGHT TRANSFER RECEIVED 04/15/87."

"NOTICE OF WATER RIGHT TRANSFER RECEIVED 12/02/86.
TRANSFER PROCESSED TO ADD OWNERS ONLY.  INDIVIDUAL
PORTIONS WILL BE RECORDED AFTER FINAL DECREE."

(b)  the department's examination information which may include an identification of any other pertinent facts, data, and issues.

87

## RULE 6.VIII.    CHANGE IN APPROPRIATION RIGHT

(1)  When a pre-1973 water right for which a statement of claim has been received is changed pursuant to §85-2-402, MCA, the department will proceed as follows:

(a)  The department will create a new record for the change in the centralized record system.

(b)  The department will not update the original claim information to reflect the change when a notice of completion has been received until after the final decree.

(2)  When the department finds that a statement of claim appears to reflect a post-1973 change, the claimant will be contacted pursuant to Rule 6.XIII. for additional information.  In addition, a field investigation may be conducted pursuant to Rule 6.XIV.

(a)  If an amended claim is submitted to identify the right as it existed before July 1, 1973, the department will process the amended claim according to the rules governing the purpose identified.

(b)  If an amended claim is not submitted to identify the right as it existed before July 1, 1973, the department will verify the claim as originally submitted.

(3)  In the summary report to the water court, the department shall provide data and facts concerning a change in appropriation right including:

(a)  an abstract of the water right listing a water court statement referencing to the status of the change application;

Example:  "AUTHORIZATION TO CHANGE POINT OF DIVERSION COMPLETED 04/15/87.  FILE REFLECTS RIGHT AS IT EXISTED PRIOR TO JULY, 1973.  APPROVED CHANGES WILL BE RECORDED AFTER FINAL DECREE."

(b)  the department's examination information which may include:

(i)  an issue statement when the claimed right appears to reflect a post-1973 change;

Example:  "IT APPEARS THAT A POST-1973 CHANGE IN POINT OF DIVERSION MAY BE REFLECTED IN THIS CLAIM."

(ii)  an identification of any other pertinent facts, data, and issues.

RULE 6.IX.   SUPPLEMENTAL RIGHTS

(1)   Supplemental rights occur when a claimed place of use of a water right overlaps the claimed place of use on another water right having the same purpose and belonging to the same owner.   The place of use for all claims of one ownership, except claims for stockwater and domestic use, will be reviewed for supplemental rights.

(2)   The supplemental rights relationship will be identified by the department as follows:

(a)   a statement limiting the supplemental rights on irrigation claims as to flow rate, place of use, and beneficial use of the historical right containing:
(i)   the total number of acres irrigated under the supplemental rights and;
(ii)   the claims involved;

(b)   a statement limiting the supplemental rights on other use claims as to flow rate, place of use, and historical right and containing the claims involved.

(3)   In the summary report to the water court, the department shall provide data and facts concerning supplemental rights including:

(a)   an abstract of water right listing a water court statement indicating supplemental rights;

Example (Irrigation):   "THE WATER RIGHTS FOLLOWING THIS STATEMENT ARE SUPPLEMENTAL WHICH MEANS THE RIGHTS HAVE OVERLAPPING PLACES OF USE.   THE RIGHTS CAN BE COMBINED TO IRRIGATE ONLY OVERLAPPING PARCELS OF THE CLAIMANT'S TOTAL _____ ACRES.   EACH RIGHT IS LIMITED TO THE FLOW RATE AND PLACE OF USE OF THAT INDIVIDUAL RIGHT.   THE SUM TOTAL VOLUME OF THESE WATER RIGHTS SHALL NOT EXCEED THE AMOUNT HISTORICALLY USED FOR A BENEFICIAL PURPOSE. W000000-00, W000000-00, W000000-00, W000000-00."

Example (Irrigation Districts):   "THE WATER RIGHTS FOLLOWING THIS STATEMENT ARE SUPPLEMENTAL WHICH MEANS THE RIGHTS HAVE OVERLAPPING PLACES OF USE.   THE RIGHTS CAN BE COMBINED TO IRRIGATE ONLY OVERLAPPING PARCELS.   EACH RIGHT IS LIMITED TO THE FLOW RATE AND PLACE OF USE OF THAT INDIVIDUAL RIGHT.   THE SUM TOTAL VOLUME OF THESE WATER RIGHTS SHALL NOT EXCEED THE AMOUNT HISTORICALLY USED FOR A BENEFICIAL PURPOSE. W000000-00, W000000-00, W000000-00, W000000-00."

Example (Other Uses):   "WHENEVER THE WATER RIGHTS FOLLOWING THIS STATEMENT ARE COMBINED TO SUPPLY WATER FOR _____ USE, EACH IS LIMITED TO THE HISTORICAL FLOW RATE AND PLACE OF USE OF THAT INDIVIDUAL RIGHT.   THE SUM TOTAL VOLUME OF THESE WATER RIGHTS SHALL NOT EXCEED THE AMOUNT HISTORICALLY USED FOR A BENEFICIAL PURPOSE.   W000000-00, W000000-00, W000000-00, W000000-00."

(b)   the department's examination information which may include:

(i)   an issue statement when the combined flow rates of supplemental rights exceed the guideline by a factor of two.

(ii)   an identification of any other pertinent facts, data, and issues.

90

RULE 6.X.   MULTIPLE USE OF A RIGHT

(1)   A multiple use of a water right occurs when a single appropriation has been used for more than one purpose by a single owner.

(2)   All claims of one ownership will be examined to identify multiple uses of a right.  The information in the claim, especially priority date, purpose, type of right, and documentation, together with other data gathered by the department will be used.  In addition, the claimant may be contacted pursuant to Rule 6.XIII.

(3)   The multiple use of a water right will be identified by a statement on the abstract under the following circumstances:

(a)   an irrigation claim and an "other use" claim filed on the same water right;

(b)   two or more "other use" claims filed on the same water right;

(c)   two or more irrigation claims filed on the same water right;

(d)   a well, reservoir, pump, or gravity flow pipeline is used for more than one purpose;

(e)   a right specifically decreed for stock or domestic use also claimed for irrigation or an "other use".

(4)   In the summary report to the water court, the department shall provide data and facts concerning multiple use of a right including:

(a)   an abstract of water right listing a water court statement indicating multiple use;

Example:   "THE WATER RIGHTS LISTED FOLLOWING THIS STATEMENT ARE MULTIPLE USES OF THE SAME RIGHT.  THE USE OF THE RIGHT FOR SEVERAL PURPOSES DOES NOT INCREASE THE EXTENT OF THE WATER RIGHT.  RATHER IT DECREES THE RIGHT TO ALTERNATE AND EXCHANGE THE USE (PURPOSE) OF THE WATER IN ACCORD WITH HISTORICAL PRACTICES.  W000000-00, W000000-00."

(b)   the department's examination information which may include an identification of any other pertinent facts, data, and issues.

## RULE 6. XI. IRRIGATION DISTRICTS

The irrigation district claim form differed from the standard irrigation, domestic, stock, or other use claim forms in that several water rights from one source for the same place of use could be identified on one form. The intent of the form was that lengthy place of use descriptions would be listed only once for several rights. The form was not limited to irrigation districts but could be used by any claimant for any claimed purpose.

(1) Claims filed on irrigation district forms will be examined by the department according to the rules governing the purpose identified.

(2) All irrigation districts, including those created under Title 85, Chapter 7, MCA, will have their place of use examined by the department.

(3) Lengthy place of use descriptions may be identified with only one right. The remaining rights, if used at the identical P.O.U., will not have a specified P.O.U. description but will be referenced to the first right, which file contains all maps, documentation and legal land descriptions.

(4) In its summary report to the water court, the department shall identify irrigation districts created under Title 85, Chapter 7, MCA.

RULE 6.XII.  DOCUMENTING THE DEPARTMENT'S EXAMINATION

(1)  The claim file will serve as the repository of all claimed information and other materials related to the department's examination.  All documents related to §85-2-402, MCA and §§85-2-421 through 85-2-426, MCA will be placed in the claim file.  Additionally, all materials added to the claim file will be filmed for the microfilm record.

(2)  The department's examination of each element of a water right will be documented on a worksheet.  The worksheet will contain an abstract of the clarified claimed information and will serve as a checklist of items to be examined.

(3)  Telephone contact, personal interviews and field investigations pertaining to a claim will be documented and placed in the claim file.  The documentation may include but not be limited to:

(a)  persons contacted;

(b)  date and time;

(c)  location;

(d)  address or phone number;

(e)  topics discussed;

(f)  facts, data, and issues identified.

(4)  Copies of all written correspondence sent or received by the department pertaining to a claim will be added to the claim file.  All written correspondence sent by the department will include the date and names of addressee and signatory.

# RULE 6.XIII.   CLAIMANT CONTACT

(1)   The department will use claimant contact as the principal means of gathering facts and data pertaining to issues on claims unresolved by routine examination procedures.

(2)   The department will initiate contact by the means capable of providing the necessary facts and data in the least intrusive and most efficient manner.   The department will attempt to review all claims of an owner before claimant contact to consolidate issues.   Claimant contact may be through telephone interviews, written correspondence or personal interviews.

(3)   Claimant contact activity will be documented in the claim file and will include the name of the department employee, the name of person contacted, date, time, and means of contact, phone number, address or location, issues covered, and conclusions reached.

   (a)   Copies of all written correspondence will be added to the claim file.

   (b)   Copies of all interview reports will be added to the claim file.

   (c)   The department may send a letter of confirmation to the claimant for data gathered by telephone.

(4)   When the department gathers data and facts concerning a claim, the information will be examined according to the rule governing the purpose identified.   Pertinent new information will be entered into the centralized record system.

(5)   In the summary report to the water court, the department shall provide pertinent information gathered through claimant contact.

94

## RULE 6.XIV.   FIELD INVESTIGATION

(1)   The department may field investigate claims under 85-2-243, MCA, only when routine examination procedures and claimant contact do not clarify discrepancies of substantial importance to the claimed water right identified during the department's examination.

(2)   Field investigations shall be conducted only under the following conditions:

(a) the claimed right appears to be erroneous, exaggerated, or nonexistent;

(b) notice of intent to conduct a field investigation and the basis for that investigation are given to the water court and the claimant; and,

(c) notice and opportunity to attend are given to the claimant.

(3)   Where it is determined by the supervisor at the field office that a field investigation is necessary, the claimant will be contacted to establish the date and time of the investigation.  This appointment will be confirmed by a notice of intent to conduct a field investigation from the department to the claimant with a copy being sent to the water court.

(a)   The notice of intent to conduct a field investigation will be on a form provided by the department.  An example of this form is attached as Exhibit E.

(b)   The notice of intent to conduct a field investigation shall contain:
(i)   a listing of water right claims to be investigated;
(ii)   the reasons for the field investigations;
(iii) the date and time for the investigation;
(iv)   the procedures by which a claimant may file an objection to the proposed field investigation.
(A)   If a claimant objects to a field investigation, a written objection must be filed by the claimant with the water court and served upon the department at least five days before the date scheduled for the field investigation.
(B)   The claimant's objection must contain a statement of reasons explaining why the proposed field investigation is improper, unnecessary, or should otherwise not be conducted.

(c)   The notice of intent to conduct a field investigation shall be sent to the claimant and the water court at least twenty (20) days before the intended date of the investigation.  The twenty (20) day notice period may be shortened by order of the water court, or waived by written agreement of the claimant.

(d) The investigation will be conducted with the claimant in attendance if the claimant so desires.

(e) The field investigation report will be added to the claim file and will be available to anyone upon request.

(4) In the summary report to the water court, the department shall provide pertinent information gathered through a field investigation.

RULE 6.XV.    RETURNED MAIL

When a decree is issued for a basin or subbasin, the water court
serves, by mail, a notice of availability and abstract of water right to each
person who has filed a claim of existing water right.  The notice of
availability is also sent to other persons specified by the water court.
Additional notice proceedings occur as the adjudication of a basin or subbasin
advances to final decree.

(1)  The department shall investigate the reason mail associated with
the issuance of a decree is returned by the U.S. Postal Service.  An attempt
will be made to research and process returned mail within the time allotted by
the water court for claimant action.  The research of returned mail will be
conducted in the following order: claims, permits, other interested parties,
certificates.

(2)  The department's research to determine the current owner name or
current owner address shall include but not be limited to claimant contact,
telephone directories and county records.

(3)  The results of the department's research will be processed as
follows.

(a)  When the addressee has a new address, the department will
correct the address in the centralized record system.  The addressees
will be sent their abstract of water right and notice of availability.

(b)  When there has been an unrecorded change in ownership,
the department will send the current owner a notice of availability,
photo copies of the abstract(s) of water right and a request to file a
water right transfer form pursuant to §§85-2-421 through 85-2-426,
MCA.  Upon receipt of the water right transfer form, the ownership
will be revised in the centralized record system pursuant to Rule
6.VII. and the current owner(s) will be sent their abstract of water
right.

(c)  When the proper owner or address is not found by the
department, the results of the research will be placed in the claim
file.

(4)  The department shall send the water court a general certificate
of mailing certifying that the returned mail has been researched and
processed.  The general certificate of mailing will identify the water rights
where the current owner or address could not be found.

(5)  Documents and records involved in processing returned mail shall
be placed in the respective water right claim file maintained by the
department.

(6)  Returned mail associated with other stages of the adjudication
process will be researched according to procedures similar to this rule.
Previously researched mail where the owner or address could not be found will
not be researched again.

## RULE 6.XVI. POST-DECREE REVISIONS

(1) The department shall review all water court decrees for clerical errors, computation errors, and other errors or omissions. The water court shall be notified of apparent errors by an objection or a letter.

(2) The department shall notify the water court of claims omitted from a decree and late claims filed after a decree has been issued.

   (a) The department shall add copies of all materials relating to errors, omitted claims or late claims in the claim file.

   (b) The department shall maintain a list of all omitted and late claims by basin.

(3) The department shall change the centralized record system to correct errors or include claims only by written authorization of the water court. Upon written authorization from the water court, the authorization will be microfilmed, the correction entered into the centralized record system and a corrected abstract sent to the water court.

EXHIBIT A
PRELIMINARY DECREE
BASIN 41E
ABSTRACT OF WATER RIGHT

IMPORTANT NOTICE
YOUR WATER RIGHT AS SHOWN ON THIS ABSTRACT MAY HAVE CHANGES FROM YOUR WATER
RIGHT AS CLAIMED.  COURT ORDERED CHANGES ARE SHOWN BY AN ASTERISK(*).  UNLESS
YOU CONTEST THESE CHANGES   (1) YOUR CLAIM MAY BE MODIFIED ACCORDINGLY BY THE
WATER COURT WHEN THE NEXT DECREE IS ISSUED,   (2) A HEARING WILL BE HELD,   OR
(3) THE WATER COURT MAY TAKE WHATEVER ACTION IS DEEMED NECESSARY IN THE
EXERCISE OF ITS JUDICIAL DISCRETION AS LONG AS THE BASIS FOR THE ACTION IS
SETFORTH IN THE FINDINGS OF FACT AND CONCLUSIONS OF LAW IN THE NEXT DECREE
ISSUED.

WATER RIGHT NUMBER 41E-W-301224-00
THIS CLAIM IS BASED ON A DECREED RIGHT.

* OWNERS:          SCHMANSKY RANCH CO
                   %FRED SCHMANSKY
                   PO BOX 9999
                   FLOODPLAIN      MT      59000

* SOURCE:          LONG CREEK

* PRIORITY DATE:   JUNE 19, 1866

  FLOW RATE:       3.00 CFS

* VOLUME:          THE TOTAL VOLUME OF THIS RIGHT SHALL NOT EXCEED THE AMOUNT
                   HISTORICALLY USED FOR A BENEFICIAL PURPOSE.
                   CLIMATIC AREA: 4

MAXIMUM ACRES: 1,800.00

PURPOSE (USE): IRRIGATION
               TYPE OF IRRIGATION SYSTEM: SPRINKLER/FLOOD

PERIOD OF USE: JAN  1 TO DEC  31

POINTS OF DIVERSION AND MEANS OF DIVERSION:
      LOT  BLK   QTR SEC    SEC    TWP    RGE    COUNTY
                            05     06N    07W    JEFFERSON    HEADGATE
                            04     06N    07W    JEFFERSON    HEADGATE
                            32     07N    07W    JEFFERSON    HEADGATE

      Reservoir: (Dam Location)
      LOT  BLK   QTR SEC    SEC    TWP    RGE    COUNTY
                 SWSWSW     04     06N    07W    JEFFERSON    OFF STREAM
           Maximum Storage Capacity:  17.5 acre-feet

WATER RIGHT NUMBER 41E-W-301224-00 (CONTINUED)

PLACE OF USE FOR IRRIGATION:

| | ACRES | LOT | BLK | QTR SEC | SEC | TWP | RGE | COUNTY |
|---|---|---|---|---|---|---|---|---|
| 001 | 360.00 | | | | 05 | 06N | 07W | JEFFERSON |
| 002 | 360.00 | | | | 04 | 06N | 07W | JEFFERSON |
| 003 | 160.00 | | | | 33 | 07N | 07W | JEFFERSON |
| 004 | 320.00 | | | E2 | 32 | 07N | 07W | JEFFERSON |
| 005 | 360.00 | | | | 29 | 07N | 07W | JEFFERSON |
| 006 | 160.00 | | | NE | 08 | 06N | 07W | JEFFERSON |
| 007 | 80.00 | | | N2SE | 30 | 07N | 07W | JEFFERSON |

TOTAL 1800.00

COURT REMARKS: THE WATER RIGHTS FOLLOWING THIS STATEMENT ARE SUPPLEMENTAL, WHICH MEANS THE RIGHTS HAVE OVERLAPPING PLACES OF USE. THE RIGHTS CAN BE COMBINED TO IRRIGATE ONLY OVERLAPPING PARCELS OF THE CLAIMANT'S TOTAL 1820.00 ACRES. EACH RIGHT IS LIMITED TO THE FLOW RATE AND PLACE OF USE OF THAT INDIVIDUAL RIGHT. THE SUM TOTAL VOLUME OF THESE WATER RIGHTS SHALL NOT EXCEED THE AMOUNT HISTORICALLY USED FOR A BENEFICIAL PURPOSE. W301224-00, W301225-00, W301226-00, W301227-00, W301228-00, W301229-00, W301230-00.

THE WATER RIGHTS LISTED FOLLOWING THIS STATEMENT ARE MULTIPLE USES OF THE SAME RIGHT. THE USE OF THE RIGHT FOR SEVERAL PURPOSES DOES NOT INCREASE THE EXTENT OF THE WATER RIGHT. RATHER IT DECREES THE RIGHT TO ALTERNATE AND INTERCHANGE THE USE (PURPOSE) OF THE WATER IN ACCORD WITH HISTORICAL PRACTICES. W301224-00, W301220-00, W301218-00.

THIS APPROPRIATION OF WATER TAKES WATER FROM THE BOULDER RIVER DRAINAGE (BASIN 41E) AND USES IT IN THE JEFFERSON RIVER DRAINAGE (BASIN 41G). AS A RESULT, IT WILL BE DECREED IN BOTH BASINS AND SUBJECT TO OBJECTION IN EITHER BASIN BEFORE BECOMING FINAL.

NOTICE OF WATER RIGHT TRANSFER RECEIVED 04/15/86.

A FULL UNDERSTANDING OF YOUR WATER RIGHT CAN BE OBTAINED ONLY BY COMPARING YOUR PRIORITY DATE WITH THE PRIORITY DATES OF OTHER WATER RIGHTS IN THE BASIN THAT MAY AFFECT THE USE OF YOUR RIGHT. ALSO, YOUR WATER RIGHT MAY BE SUBJECT TO WATER RIGHTS IN ADJOINING BASINS OR SUBBASINS AS WELL AS BEING SUBJECT TO OTHER WATER RIGHTS ON YOUR SOURCE OF SUPPLY. FINALLY, YOUR WATER RIGHT MAY BE SUBJECT TO INDIAN AND FEDERAL RESERVED WATER RIGHTS.

SEE GENERAL FINDINGS OF FACT AND CONCLUSIONS OF LAW FOR FURTHER EXPLANATION OF YOUR WATER RIGHT. THESE FINDINGS CAN BE FOUND AS INDICATED IN YOUR NOTICE OF AVAILABILITY. IF YOU NEED OBJECTION FORMS, OR HAVE QUESTIONS ABOUT WATER COURT PROCEDURES OR CHANGES TO YOUR RIGHT, YOU CAN CONTACT THE WATER COURT BY CALLING 1-800-624-3270 OR 1-406-586-4364, OR BY WRITING TO P.O. Box 879, BOZEMAN, MT 59715.

SEE THE DNRC SUMMARY REPORT FOR FURTHER FACTS, DATA, AND ISSUES IDENTIFIED BY THE DNRC EXAMINATION. THIS REPORT CAN BE FOUND AS INDICATED IN YOUR NOTICE OF AVAILABILITY.

THE DEPARTMENT OF NATURAL RESOURCES AND CONSERVATION (DNRC) ASSISTS THE WATER COURT BY GATHERING, EXAMINING, AND REPORTING DATA, FACTS AND ISSUES PERTAINING TO CLAIMS OF EXISTING WATER RIGHTS. IN EXAMINING CLAIMS, THE DNRC ROLE IS LIMITED TO FACTUAL ANALYSIS AND THE IDENTIFICATION OF ISSUES.

THE DNRC HAS REPORTED THE FOLLOWING INFORMATION TO THE WATER COURT FOR ITS USE IN ADJUDICATING YOUR CLAIMED WATER RIGHT. THE ACTUAL CLAIM AND EXAMINATION INFORMATION CAN BE REVIEWED AT THE HELENA WATER RIGHTS FIELD OFFICE, 1520 EAST SIXTH AVENUE, HELENA, MONTANA. COPIES ARE ALSO AVAILABLE AT: THE JEFFERSON COUNTY CLERK OF COURT, BOULDER, MONTANA.

## WATER RIGHT NUMBER 41E-W-301224-00

### OWNERS:
#### FACTS, DATA AND ISSUES IDENTIFIED BY THE DNRC EXAMINATION

THE WATER RIGHT CLAIMS LISTED FOLLOWING THIS STATEMENT ARE FILED ON THE SAME FORMERLY DECREED WATER RIGHT. THE ORIGINAL RIGHT IN CASE NO. 9999, JEFFERSON COUNTY, DECREED 120 MINERS INCHES (3.00 CFS). THE SUM OF THE RIGHTS BEING CLAIMED BY THE DIFFERENT PARTIES IS 480 MINERS INCHES (12.00 CFS). W301224-00, W299999-00, W289898-00.

THE WATER RIGHTS LISTED FOLLOWING THIS STATEMENT ARE BY DIFFERENT PARTIES WHO CLAIM OVERLAPPING PLACES OF USE. W301224-00, W289898-00.

### PRIORITY DATE:
#### FACTS, DATA AND ISSUES IDENTIFIED BY THE DNRC EXAMINATION

** CASE NO. 9999, JEFFERSON COUNTY DECREES A ROTATING SYSTEM FOR USE OF THIS RIGHT BETWEEN FIVE PARTIES. EACH PARTY HAS THE RIGHT TO USE THIS WATER RIGHT FOR ONE OF EACH CONSECUTIVE FIVE DAYS BEGINNING APRIL 1ST OF EACH YEAR.

THIS RIGHT APPEARS TO BE DUPLICATED BY W301225-00 WHICH IS A DECREED RIGHT FROM THE SAME SOURCE WITH THE SAME PRIORITY DATE BY THE SAME PARTY.

### FLOW RATE:
#### FACTS, DATA AND ISSUES IDENTIFIED BY THE DNRC EXAMINATION

A REASONABLE DIVERSION RATE FOR THIS SYSTEM IS 17.00 GPM PER ACRE. A TOTAL DIVERSION RATE HAS NOT BEEN IDENTIFIED BECAUSE THERE IS CONFLICTING EVIDENCE OF THE NUMBER OF ACRES HISTORICALLY IRRIGATED. SEE DNRC DATA UNDER PLACE OF USE.

A FIELD INVESTIGATION CONDUCTED ON 3/12/86 FOUND THE PRESENT CAPACITY OF THE CONVEYANCE SYSTEM TO BE 2.8 CFS. SEE CLAIM FILE FOR COMPLETE REPORT.

### MAXIMUM ACRES:
#### FACTS, DATA, AND ISSUES IDENTIFIED BY THE DNRC EXAMINATION

AN ACREAGE FIGURE HAS NOT BEEN IDENTIFIED AS THE VARIOUS DATA SOURCES USED SHOW CONFLICTING EVIDENCE. SEE DNRC DATA UNDER PLACE OF USE.

WATER RIGHT NUMBER 41E-W-301224-00

PERIOD OF USE:
FACTS, DATA, AND ISSUES IDENTIFIED BY THE DNRC EXAMINATION

THE USUAL AND CUSTOMARY PERIOD OF USE FOR THE AREA EXAMINED IS APRIL 15 TO OCTOBER 15.

POINTS OF DIVERSION AND MEANS OF DIVERSION:
FACTS, DATA, AND ISSUES IDENTIFIED BY THE DNRC EXAMINATION

| LOT | BLK | QTR SEC | SEC | TWP | RGE | COUNTY |
|-----|-----|---------|-----|-----|-----|--------|
|     |     | SESENE  | 05  | 06N | 07W | JEFFERSON |
|     |     | SWSENE  | 04  | 06N | 07W | JEFFERSON |
|     |     | NWNESE  | 04  | 06N | 07W | JEFFERSON |
|     |     | NWSESW  | 04  | 06N | 07W | JEFFERSON |
|     |     | SENWNE  | 32  | 07N | 07W | JEFFERSON |
|     |     | SESESW  | 32  | 07N | 07W | JEFFERSON |

** POINT OF DIVERSION NO. 4 IS ON AN UNNAMED TRIBUTARY OF LONG CREEK.

RESERVOIR:
FACTS, DATA, AND ISSUES IDENTIFIED BY THE DNRC EXAMINATION

** RESERVOIR DAM EXTENDS INTO THE SESESE SEC 10 TWP 06N RGE 07W JEFFERSON COUNTY.

PLACE OF USE FOR IRRIGATION:
FACTS, DATA, AND ISSUES IDENTIFIED BY THE DNRC EXAMINATION

REVIEW OF 1958 ASCS AERIAL PHOTOGRAPH SHOWS 500 ACRES BEING IRRIGATED.

REVIEW OF 1979 ASCS AERIAL PHOTOGRAPH SHOWS 1540 ACRES BEING IRRIGATED.

A FIELD INVESTIGATION CONDUCTED ON 3/12/86 FOUND 1600 ACRES PRESENTLY BEING IRRIGATED.  SEE CLAIM FILE FOR COMPLETE REPORT.

** THE PLACE OF USE IN SEC 30 TWP 07N RGE 07W IS MORE SPECIFICALLY DEFINED AS GOVERNMENT LOTS 5, 6, AND 7.

OTHER:
FACTS, DATA, AND ISSUES IDENTIFIED BY THE DNRC EXAMINATION

CLAIM FILED LATE 04/15/86.

NOTE:** REMARKS PRECEDED BY DOUBLE ASTERISKS (**) ARE EXPLANATORY OR CLARIFYING INFORMATION THE COURT MAY WISH TO INCORPORATE IN THE NEXT DECREE.

## DEFINITION OF CLAIMANT CONTACT REGARDING IRRIGATED ACREAGE



Contact Points = $X \pm X[(X^{-.400515})(.8)]$

NOTE: WHEN THE ACREAGE IDENTIFIED THROUGH THE DEPARTMENT'S EXAMINATION IS OUTSIDE THE CONTACT POINT RANGE, THE CLAIMANT WILL BE CONTACTED.

EXAMPLES

For 10 acres: Low = 7; High = 13; 30% Variance

For 100 acres: Low = 87; High = 112; 13% Variance

For 1000 acres: Low = 950; High = 1050; 5% Variance

TOTAL ACRES CLAIMED (X)

EXHIBIT C
REQUEST TO AMEND STATEMENT OF CLAIM

STATE OF MONTANA
County of _____


I, _____ hereby request the following amendment(s) to

my Statement of Claim, number _____:

_____

_____

_____

_____

_____

The amendment(s) are requested for the following reasons:

_____

_____

_____

_____

_____


_____
Signature                                date


_____
Signature                                date

Subscribed and sworn before me this ___ day of _____, 19___.


_____

Residing at _____

(notary seal)                    My commission expires _____

## REQUEST TO WITHDRAW STATEMENT OF CLAIM

STATE OF MONTANA
County of _____


I, _____, hereby request the withdrawal of my Statement of

Claim, number _____.

The reason for this request is:


_____ I have an existing right which is exempt from filing.

_____ This claim was for a use of water after July 1, 1973.

_____ I have no existing water right to claim.

_____ Other: _____

_____

_____


_____
Signature                                                    date


_____
Signature                                                    date

Subscribed and sworn before me this ___ day of _____, 19___.


_____

Residing at _____

(notary seal)                My commission expires _____

## NOTICE OF INTENT TO CONDUCT A FIELD INVESTIGATION

TO:     Claimant

FROM:   Department of Natural Resources and Conservation
        _____ Field Office

        This is to provide you with notice that the Department of Natural Resources
and Conservation intends to conduct a field investigation of Water Right
No(s). _____

on _____, 19___ at _____ am/pm.

        The basis for this investigation by the Department is:

_____

_____

_____

_____

        The Department is authorized to conduct field investigations when routine
examination procedures and claimant contact do not clarify discrepancies of
substantial importance to the claimed water right.  If you feel that a field
investigation should not be conducted, you must file a written objection to the
field investigation with the Montana Water Courts using the following procedures:

        (A)  A written objection must be filed by you with the Water Court and
        served upon the Department at least five days before the date scheduled for
        the field investigation.

        (B)  Your written objection must contain a statement of reasons explaining
        why the proposed field investigation is improper, unnecessary, or should
        otherwise not be conducted.

        You are requested and encouraged to accompany the Department employee
during the field investigation.  You will be contacted prior to the date of the
investigation to confirm the meeting location and time.  If you have any questions,
please feel free to contact the Department at (406) _____.

        DONE this _____ day of _____, 19___.


                                    _____
                                    Water Rights Specialist
                                    Water Rights Bureau
                                    P.O. Box _____
                                    _____, Montana _____


* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

        I consent to waive the 20-day notice of the field investigation.

        Signed: _____     Date: _____